### UNITED STATES v. MAYFIELD et al.

(District Court, N. D. Alabama, S. D. March 11, 1910.)

#### No. 1,679.

1. FOOD (§ 18*)—VIOLATION OF FOOD AND DRUGS ACT—LIABILITY OF OFFICERS OF CORPORATION.

The officers of a corporation which manufactured a food product shipped by its manager in interstate commerce, and which was adulterated or misbranded, are subject to prosecution therefor under Food and Drugs Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1188). where they employed the manager and authorized him to operate the plant and sell the product without restriction, and the previous course of business had been to ship on orders to other states.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 18.*]

2. FOOD (§ 12*)—VIOLATION OF FOOD AND DRUGS ACT—DEFENSES.

The provision of Food and Drugs Act June 30, 1906, c. 3915, § 9, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193), that no dealer shall be prosecuted thereunder for shipping in interstate commerce any adulterated or misbranded article of food or drugs when he can establish a guaranty signed by the manufacturer that such article is not adulterated or misbranded, is available to a dealer only when such guaranty relates to the identical article shipped by him, and affords no defense to him where it relates only to a constituent used by him in manufacturing the article shipped.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Criminal prosecution by the United States against J. C. Mayfield, J. P. Bradley, J. F. Hawkins, and J. W. Altman. Charge to jury.

O. D. Street, U. S. Atty.

Tillman, Bradley & Morrow and John L. Stone, for defendants.

GRUBB, District Judge (charging jury). The defendants in this case are charged with having violated certain provisions of what is known as the "Food and Drugs Act"—an act passed by Congress in 1906 (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187])—the purpose of which was to protect consumers against impure and adulterated foods and drugs, and also against the use of foods or drugs which do not show what they contain by the brands on the package. Congress did not have any power to make this law concerning matters relating to commerce entirely within one state, but only as to commerce between one state and another state. The states themselves have the exclusive power to regulate their own internal commerce. So the prohibition of this act is directed only against the introduction into interstate commerce of any article of food or drink, or of any drug, either adulterated or misbranded. These two acts—adulteration and misbranding—are made offenses when they occur in an article which is introduced into interstate commerce. Now, you will see that the first proposition in this case will be whether or not this shipment was one of an interstate character. This proposition is simplified for your consideration, however, by the admission that this particular jug, which is made the subject of this prosecution, was shipped from Birmingham, Ala., to New Orleans, La. Therefore it is conceded that it was introduced into interstate commerce by some one. Now, as I say, the prohibition is against the introduction into interstate commerce of any article of food which is either misbranded or adulterated. I charge you that the shipment in this case was a food product within the meaning of the act of Congress.

In order to make out a case under the first count of the information, which charges misbranding, three things would be necessary for you to believe from the evidence, and beyond a reasonable doubt. The first is that there was in the shipment some constituent which should have been, and was not, shown by the brand. The act itself defines what constitutes misbranding in some respects. If the article shipped·contains cocaine, and that fact is not indicated by the brand, then the failure to so indicate its presence by the brand is defined to be misbranding. In order to convict on this count, you would have to find that there was cocaine in the jug which went to New Orleans, and that there was nothing on the jug which indicated that it contained cocaine, and that the defendants or some one or more of them were responsible for the introduction of that jug into interstate commerce. These three things you would have to be convinced of beyond a reasonable doubt to convict under the first count of this information. Now as to the presence of cocaine in this liquid there seems to be little dispute. The government experts testified that it was there, and there is no contradiction of this fact by the defendants. Therefore, if the testimony of the government experts convinces you beyond a reasonable doubt of the

presence of cocaine in this liquid—and you have no right to reject their testimony capriciously and without good cause—this fact is sufficiently established. It is conceded that this jug had no brand upon it indicating the presence of cocaine in the liquid in the jug.

Then, the next proposition for you to consider is whether or not these defendants were responsible for the introduction of this shipment into interstate commerce. It is admitted that this jug was introduced into interstate commerce by some one. The evidence shows that the order on which the jug was shipped was received by the Birmingham Celery Cola Company, and by it filled by shipping the jug from Birmingham to New Orleans. Clearly, the Birmingham Celery Cola Company primarily introduced this shipment into interstate commerce. The corporation, however, is not informed against in this prosecution. A corporation acts only by agents. The law is that, if any agent does an illegal act on behalf of his principal, he makes not only the principal liable for his act, but himself as well. An agent cannot shift the responsibility for wrongdoing altogether from his own shoulders onto those of his principal. If the act was illegal, the manager who filled the order and shipped the stuff would be responsible, even though his responsibility was shared by his principal. The manager is not informed against in this prosecution, however. The men who are informed against are stockholders and officers of the company. So far as the mere fact of their being officers and stockholders in the corporation is concerned, I charge you that it does not make them responsible in this prosecution; but their responsibility depends altogether upon whether or not they conferred on the manager the authority to ship Celery Cola from one state into another; and whether the shipment upon which this prosecution is based was made by the manager pursuant to the authority so conferred.

The question for you to inquire into is whether or not the defendants are shown by the evidence, to your satisfaction, to have given the manager the authority to do what he did in shipping this Celery Cola out of Birmingham to New Orleans. If, from the evidence, you are satisfied beyond a reasonable doubt that this authority was conferred upon him by the defendants, then they would be just as responsible as the manager of the Birmingham Celery Cola Company. The evidence tends to show that Celery Cola had been shipped during the time from January 1, 1908, until the date of the shipment on which was based this prosecution, which was some time in October of that year. It also tends to show that when this company began to get into financial difficulty, the defendants secured the manager to take charge of the plant, operate it, and sell its product. That much is conceded by both sides. There is also evidence tending to show that they told the manager expressly to sell the Celery Cola on hand. And I take it that the operation of the plant and the conduct of the business would imply the authority in the manager to sell its product of whatsoever kind. I think that it is to be fairly inferred that the authority conferred on the manager by the defendants was that he carry on the business and dispose of the product as it had been done according to the previous course of business. If the authority of the manager, so conferred, was not expressly restricted to sales made in Alabama, and ac-

cording to the previous course of business sales had been made to other states, a fair inference would be that the manager was authorized by defendants to conduct an interstate traffic in Celery Cola. So, if the previous course of business had been to sell without branding the packages as containing cocaine, a fair inference would be that the manager was authorized by these defendants to conduct the business without such branding. The fact that the defendants in their testimony denied knowledge that Celery Cola contained cocaine is evidence that the previous course of business of the company had been to sell it without branding it as containing cocaine. If general authority was conferred on the manager by the defendants to sell Celery Cola, when he took charge, it would not be necessary that express authority be given him to fill each order. Until the authority was revoked, it would cover all shipments without renewal on the occasion of each shipment.

The Celery Cola extract was manufactured in St. Louis, and shipped by the manufacturers to the company of which defendants were officers at Birmingham. The extract was shipped in barrels; each barrel stamped with the guaranty, signed by the manufacturer, that the extract was neither misbranded nor adulterated within the meaning of the food and drug act. The Birmingham Company mixed the extract with a boiling syrup, composed of sugar and water, in the proportion of 1 part of the extract to 10 parts of the syrup, and it was the syrup, so compounded, that was shipped by the Birmingham company in the conduct of its business. The defendants testified that they had no knowledge, during the time the Birmingham Company handled the extract, that it contained either cocaine or caffein, in any quantities, and rely on the ninth section of the act, which excuses the dealer, who buys the article from a manufacturer with the guaranty from him that the article is neither misbranded nor adulterated within the meaning of the food and drug act. Proof of the absence of knowledge on the dealer's part that the article is obnoxious to some of the provisions of the act is only a defense when the article is purchased from a manufacturer, and a guaranty taken from the manufacturer that it complies with the requirements of the act. The second section of the act prohibits the introduction into interstate commerce of any article of food, or drugs, which is adulterated or misbranded. The ninth section provides that no dealer shall be prosecuted under the provisions of the act, when he can establish a guaranty, signed by the manufacturer from whom he purchased such articles, to the effect that the same article is not adulterated or misbranded within the meaning of the act; in which case, the manufacturer shall be amenable to the prosecutions, fines, and other penalties, which would otherwise attach to the dealer. The purpose of Congress was to place liability for the violation of the law upon some one in each instance. Primarily the liability is on the dealer who introduces the article into interstate commerce. The liability can be shifted from the dealer only by imposing the same liability upon the manufacturer. This can be done only by virtue of the manufacturer's guaranty to the dealer. If, for any reason, the guaranty is insufficient to impose liability upon the manufacturer, it remains where it primarily rested—upon the dealer. To have the effect of releasing the dealer from liability for the violation of the act, complained of in this prose-

cution, the guaranty must be of a character to impose liability for the same violation upon the manufacturer, if he were substituted for these defendants in this case; otherwise, both parties would escape liability, and the purpose expressed by Congress be defeated. The act says that the manufacturer who signs the guaranty shall be subject to the same prosecution and penalties as the dealer. If a conviction could not be sustained against the manufacturer upon its guaranty, if substituted for the defendants in this case, then the taking of the guaranty by defendants would be no defense to their violation of the law in reference to the shipment in question, though they had no knowledge that it was adulterated or misbranded. In order for the manufacturer's guaranty to be effective to impose any liability upon him for any violation of law as to the article, which is the basis of this prosecution, the guaranty must relate to the identical article introduced into interstate commerce by the defendants as dealers. Otherwise the answer of the manufacturer to the prosecution would be that he had never guaranteed the article shipped by the dealer, and the answer would be complete. Change of the original package might not constitute a change of identity. In this case there was more. The manufacturer furnished the dealer with the extract, and the dealer shipped the syrup. Commercially, if not chemically, the two were different. The extract was a mere constituent of the syrup, and not the syrup itself. The manufacturer did not guarantee the article shipped by the dealer and on which this prosecution is based; could not be convicted for the violation of the act, charged against the defendants in relation to it, by reason of the guaranty, and for that reason the taking of the guaranty was not a protection to the defendants. When they changed the identity of the extract, they elected to abandon the protection of the manufacturer's guaranty, and were responsible for the character of the new article—the syrup—made and shipped by them, or under their authority. Neither the defendants' want of knowledge of the presence of cocaine in the extract, nor the guaranty taken by them from the manufacturer, would excuse their failure to properly brand the jug, under this count of the information.

The second count of the information charges the defendants with having introduced into interstate commerce an article containing a deleterious ingredient, injurious to health, viz., cocaine; and the third count relies in the same way upon an article alleged to contain caffein. These counts are based upon adulteration, the statutory definition of which is the adding to a food product of a deleterious ingredient, injurious to health. The same principles as to the responsibility of these defendants for the acts of their manager, and with reference to the effect of the guaranty taken by them from the manufacturer, stated as relating to the first count, apply as well to the second and third counts. In order to convict on these counts, the jury must find further from the evidence, with the degree of certainty required in criminal cases, in the first place, that the Celery Cola shipped to New Orleans contained cocaine or caffein, under the respective counts, and then that either or both was deleterious and injurious to health. The presence of each of these substances in appreciable quantities in the jug of Celery Cola in question, is testified to by the govern-

177 F.—49

ment chemists, and is not disputed by any evidence offered by the defendants. You are the exclusive judges of the credibility of witnesses, but it would not be proper for you to capriciously reject testimony which is uncontradicted in the case.

If you determine the presence of either or both of these substances in the shipment in question, it would then become your duty to determine from the evidence whether either or both, as used in Celery Cola, were injurious to health. As Celery Cola is intended for a beverage and not a drug, you would have the right in determining this question to consider the injury from the probable frequent and repeated use of the article as a beverage, rather than its rare and occasional use as a drug. You have heard the evidence of the government witnesses, who are physicians, as to their opinion concerning the injurious qualities of both of these substances, in the quantities found in Celery Cola, when used as frequently as beverages are likely to be used. The defendants introduced no evidence to contradict that offered by the government. You are also the exclusive judges of its credibility, but should not, without good reason, disregard evidence not contradicted.

It is your duty to take the law of the case from the court, as it has been given to you in this charge. Though your opinion might be that the law imposes a hardship upon these defendants in holding them responsible for the contents of an extract of which they were ignorant, and which they had purchased with a guaranty from the manufacturer; this opinion, if you entertain it, should not operate to prevent a conviction in this case, if you are satisfied beyond a reasonable doubt of the facts necessary to constitute the offense, as I have defined it. If not so satisfied, it would be your duty to acquit the defendants, and the importance of the enforcement of the law should have no weight as against such a conclusion. The enforcement of no law is of sufficient importance to justify a conviction, except upon such evidence.

If you are satisfied to the degree required that the defendants are guilty of misbranding the jug of Celery Cola, exhibited to you, it would be your duty to find them guilty, under the first count of the information. If you are satisfied that they are guilty of adulterating it with cocaine or caffein, then it would be your duty to find them guilty under the second or third counts respectively, or both. If you are not so satisfied of their guilt in misbranding or adulterating the Celery Cola, which is the basis of the prosecution, then you should acquit them.