## UNITED STATES *v.* THOMSON.

*(District Court, D. Oregon. May 23, 1882.)*

1. **TAKING PASSENGERS ON BOARD.**
    Passengers who go on board a vessel openly and in the usual way are presumed to have been taken on board by the master, within the purview of sections 4252-3 of the Revised Statutes.
2. **INTENT TO COMMIT CRIME.**
    Neglect in the discharge of a duty or indifference to consequences is in many cases equivalent to a specific criminal intent
3. **CASE IN JUDGMENT.**
    The defendant, being the master of a vessel under charter at the port of Hong Kong to carry passengers to Portland, Oregon, permitted the charterers to load her, under the inspection of the port officers, without himself knowing or taking any steps to know how many passengers were on board; and upon arrival in Oregon it was found that there were 160 passengers in excess of the number allowed to be carried by sections 4252-3 of the Revised Statutes. *Held*, that it was the duty of the defendant to have taken steps before leaving the port to ascertain how many passengers he had on board; and that the omission of this duty was such negligence on his part as made him guilty of a violation of the statute.

Information for Violation of section 4253 of the Revised Statutes.

*J. F. Watson,* for plaintiff.

*John W. Whalley,* for defendant.

DEADY, D. J.    Section 4253 of the Revised Statutes provides that if "the master" of any vessel at a foreign port, not contiguous to the territory of the United States, "shall take on board such vessel" "any greater number of passengers" in proportion to the space allowed them thereon than is prescribed by section 4252 of the Revised Statutes, "with intent to bring such passengers to the United States," and does bring the same within the jurisdiction of the United States, "he shall be deemed guilty of a misdemeanor," and fined $50 for every such passenger, and may also be imprisoned not exceeding six months.    The defendant, as the master of the English steam-ship Bothwell Castle, is accused by the information herein of violating this statute, by taking on board said vessel on April 21, 1882, at the port of Hong Kong, 160 passengers more than the number allowed thereby to be carried thereon, with intent to bring the same to the United States, and by afterwards bringing said passengers on said vessel within the jurisdiction of the United States, to-wit, the district of Oregon.    The defendant pleaded not guilty to the charge, and by the stipulation of the parties the case was tried by the court without a jury.    From the evidence, including the testimony of the master, his chief officer, and two of the seamen, it appears—

That within a year past the defendant carried a cargo of Chinese passengers on this vessel from Hong Kong to San Francisco, consisting of 1,033 adults; that on April 18, 1882, the "administrator" of the port of Hong Kong licensed the Bothwell Castle to carry, under the English passenger act, not exceeding 1,094 Chinese passengers from that port to Portland, Oregon; that on April 20th, the "emigration officer" of the same port gave the vessel a "certificate," to the effect that she had space and was furnished to carry 1,094 adult passengers on said voyage, and that there was then on board 1,032 men and 20 children, equal to 1,042 adults; that on the same day the "harbor master" gave the vessel a "clearance" for Portland, with 1,052 Chinese passengers in the lower berths, "under the emigration officer's certificate;" that a passenger list attached to said documents and signed "George Holmes, passenger broker," and containing the names of 1,015 ordinary passengers, and 37 doctors, interpreters, stewards, cooks, etc., or in all 1,052 passengers, was delivered by the defendant on May 14, 1882, to the collector at Astoria, verified by his oath then made as containing "the names and descriptions of all the passengers who were on board the said steamer (Bothwell Castle) at the time of or since her last departure from the said port of Hong Kong;" that said vessel on said voyage was chartered to carry Chinese passengers to Portland, and while lying in the stream at Hong Kong, not less than a mile from the shore, on April 20, 1882, took on board 1,198 of such passengers, of whom about 1,041 had

"contract passage" tickets, containing the terms of the contract, a receipt for $50 in payment of the passage, with the name of the passenger, his sex, age, occupation, and place of birth, signed by "George Holmes, passenger broker," and signed and certified by the "emigration officer," to the effect that he had "explained and registered" the same, and about 157 had similar tickets not signed by any one, and brought the same to this port, when by law she was not entitled to carry more than 1,038 such passengers, being an excess of 160; that after all said passengers were on board said vessel there was a count of the same made by the "harbor master" and "assistant health officer" of the port, on said April 20th, and the defendant, upon a statement then given him by them, and by him delivered to the proper local authorities, obtained his clearance and gave bond to convey the passengers as per agreement, and at 6 o'clock the next morning sailed for Portland; that soon after starting a strict search was made for stow-aways, or persons who had not paid, and one found and put off the vessel, but no attempt was ever made by the master, or any one under his direction or authority, to count the passengers or ascertain how many were on board until the vessel was within two or three days of the mouth of the Columbia river, when the defendant ordered the tickets taken up, and found that he had about 160 passengers more than he was entitled to carry; that on April 19th, the "government marine surveyor" measured the vessel, according to the American law as furnished him by the American consul, and furnished the defendant with a written report thereof, from which it appears that she was not entitled to carry more than 1,005 passengers, but upon a survey made by the collector at Astoria, it was ascertained that she had space enough for 1,038.

The defendant denied in his testimony all knowledge of the excess of passengers, or of his liability therefor under the United States statute, and said that he paid no attention to the matter, and supposed that the port officers would duly attend to it and not allow him to sail with more passengers than there was on his list; and when the collector at Astoria ascertained that there was an excess of passengers on board by counting them, and asked the defendant how it came that there were 160 too many, the defendant said he did not know; that it was not a matter that he was bound to look after—he went by the list; that the company had sold 3,000 tickets and he supposed they were short of ships.

There is no conflict in the evidence, and assuming that the facts are substantially as stated, counsel for the defendant insists that he cannot be found guilty because there is no evidence of a specific criminal intent; that as he did not know he had taken on more passengers than the law allowed he cannot be held to have taken on the excess with the "intent" to bring them to the United States.

And, first, what constitutes a taking on board within the meaning of the statute? I suppose that all passengers who go on board openly in the usual way—not clandestinely and without the master's consent, expressed or implied—are taken on board by him. It is not necessary that he should see them come. He may, and usually does, commit that duty to his subordinates. But as no one has a right to come on board without his consent, a passenger found there is presumed to have been taken on board by him until the contrary appears.

There was a suggestion in the argument that the excess of 160 might have gotten on board surreptitiously after the count by the port officers, during the afternoon and night of April 20th, by climbing up the ship's sides. But that was impossible, unless with the connivance of the officers and crew. And the proof is that a strict watch was kept on board during that time, and that only one little boat approached the vessel and it was sent away.

It must be assumed, then, that all the passengers on the vessel came on with the implied consent of the master. He took no steps to prevent any of them coming on board; gave no directions to his officers to allow only so many passengers to come on board; and therefore, in contemplation of law, they were taken on by him.

But, nevertheless, if there must have been a positive or specific "intent," in the mind of the defendant, to take on this 160 passengers for the purpose of bringing them to the United States in the same way that a specific criminal intent is necessary to constitute larceny, then the prosecution must fail; for, whatever the fact may be, no such intent has been shown.

But in many cases negligence or indifference to duty or consequences is equivalent to a criminal intent. 1 Bish. Crim. L. § 62; 1 Whart. Crim. L. §§ 89, 125.

Under the circumstances, the statute forbid the defendant from taking on board any of these 160 passengers; and he could not knowingly have done so without intending to violate the statute. What was his duty, then? To leave the matter in the hands of his charterer and their broker, who were only interested in getting as many passengers on board as possible, and the port officers, who were under no obligations to prevent a violation of a United States statute, but only concerned to see that the regulations of the port were complied with? I think not. In my judgment it was the duty of the

master, before leaving the port of Hong Kong, to have taken steps to ascertain how many passengers he had on board, if he had not taken an account of them as they came on, as he should have done. This duty should have been performed in person, or by his officers under his direction. The omission of it was an act of gross negligence, in consequence of which this 160 passengers were unlawfully brought to the United States, which consequence he must be held to have intended.

Any other construction of the statute would make it a dead letter. Neither ship nor owners are responsible for its violation, as they ought to be, and the master can always be kept in convenient ignorance of the facts until the vessel has sailed from port, and then it is too late for him to commit the crime of taking them on board with a specific intent to bring them to the United States.

There are also some circumstances in the case which tend to show that the defendant was not altogether innocently ignorant in this matter. When off the mouth of the Columbia river he found out that he had a large excess of passengers on board. It would have been natural for an innocent man to have reported that fact to the collector when delivering his list of passengers. Still he might not, and the master says he did not, because he was not interrogated about it. But how could an honest, truthful man, not only suppress this fact of the excess, but also declare on oath that the passenger list contained the names of all the passengers on board, when he absolutely knew that it did not, by a large number. But as to a portion of this excess the evidence is satisfactory that the master knew he had them on board, and therefore must have taken them on with a specific intent to violate the statute. He says that he knew, or supposed, he had 1,052 passengers on board—the number contained in the list furnished by the passenger broker. But the survey of his vessel, made by the surveyor of the port under the American law, on April 19th, a written report of which was furnished the defendant and brought by him to this port, shows that the vessel was only entitled to carry 1,005 passengers, or 48 less than the list. This was the knowledge which the defendant had when he took these 48 passengers on board and left with them for this port. The only reasonable inference from the premises is that he took them on with the intent which constitutes the violation of the act, if followed up by bringing them here. True, the measurement of the vessel by the col-

lector at Astoria shows that she has space for 1038 passengers. But that is the defendant's good fortune rather than the result of his good conduct. He did not act upon that impression. And still there are 15 passengers on the list in excess of what the vessel was entitled to carry by the Astoria measurement, of which the defendant must have had knowledge.

The finding of the court is that the defendant is guilty as charged in the information.

UNITED STATES v. THOMSON.

Information for Violation of section 4266 of the Revised Statutes.

The defendant was also charged with the violation of section 4266 of the Revised Statutes, by failing to deliver a correct list of his passengers on board to the collector at Astoria. The case was submitted to the court on the evidence in the above case, and the court found him guilty and sentenced him to pay the fine prescribed by statute —$1,000.