**UNITED STATES of America**

v.

**David SWANSON.**

**No. CR 90–AR–215–S.**

United States District Court, N.D. Alabama, S.D.

Dec. 14, 1990.

Frank W. Donaldson, U.S. Atty. and John C. Earnest, Jr., Asst. U.S. Atty., for the U.S.

Lawrence (Larry) Sheffield, Jr., Birmingham, Ala., for David Swanson.

MEMORANDUM OPINION

ACKER, District Judge.

The court has under consideration the motion of defendant, David Swanson, to dismiss the indictment in this case. On November 21, 1990, in a thoughtful opinion, the magistrate-judge recommended that the indictment be dismissed. On November 30, 1990, the United States filed an objection to the magistrate-judge's recommendation. Thereafter, on December 7, 1990, the court conducted a hearing at which it received evidence, including the testimony of H.D. Walton, director of resources and planning for the Board of Pardons and Paroles of the State of Alabama, after which Swanson submitted a final brief on the subject.

To this court the question presented is a close one. It involves a juxtaposition of

Alabama and federal law, a fact which at first tempted this court to certify the questions of Alabama law to the Supreme Court of Alabama pursuant to Rule 18, Alabama Rules of Appellate Procedure. Upon reflection, however, and after this court heard evidence and studied the pertinent portions of the Alabama Constitution and the Alabama Code, the court no longer has any doubt about the law of Alabama as here applicable. The actual *intent* of the State of Alabama, as the issue of its intent may bear on the question here presented, is now clear. Therefore, the court no longer sees any need to bother the Supreme Court of Alabama. As will hereinafter appear, the court does see considerable need for the United States and the State of Alabama to bother the Eleventh Circuit and/or the Supreme Court of the United States.

Swanson is charged in Count I with possessing a Desert Eagle pistol on January 12, 1990, after having been convicted of manslaughter on January 6, 1970, a felony in Alabama. The grand jury charges that these acts, taken together, constitute a violation of 18 U.S.C. § 922(g)(1). Count II is identical to Count I except that the firearm alleged to have been possessed by Swanson is a Marlin rifle. Ala.Code § 13A–11–70(1) defines a pistol as any firearm with a barrel less than 12 inches in length. The length of the Marlin "rifle" is not set forth in the indictment. Count III is likewise identical to Count I except that the firearm there alleged to have been possessed is a Colt pistol.

On January 29, 1979, the Board of Pardons and Paroles of the State of Alabama executed and delivered to Swanson a piece of paper entitled "Certificate Granting Restoration of Civil and Political Rights". This paper recited that it was issued "in compliance with authority invested in the State Board of Pardons and Paroles by the Constitution and the laws of the State of Alabama to restore civil and political rights". The Constitution of Alabama, § 124, as amended, gives the *legislature* the power "to regulate the administration of pardons, paroles, remission of fines and forfeitures". Pursuant to this constitutional authority, the legislature in Ala.Code

§ 15–22–20 created the Board of Pardons and Paroles, but that Board was nowhere given the authority, either express or implied, to abrogate willy-nilly or to vary the terms of any statute designed to control the conduct of any person, pardoned or not. The instrument delivered to Swanson on January 29, 1979, purported to restore to him "all civil and political rights resulting from the above-stated conviction and any prior disqualifying convictions". The conviction therein referred to was a conviction which occurred on November 14, 1974, although Swanson had previously been convicted of manslaughter on January 6, 1970, as is charged in the instant indictment. This document of restoration was on a printed form routinely used by the Board in 1979 under generally understood guidelines after the expiration of a successful period of parole or probation. There is no evidence (1) that the Board failed to comply with the requirement of Ala.Code § 15–22–23 that the restoration of rights be made only after an open public hearing of the Board after notice; or (2) that the Board failed to comply with the requirement of Ala.Code § 15–22–25 that it not act on the application for restoration of rights "until a complete investigation of the prisoner's social and criminal record has been made by a parole officer and a written report thereof made a part of the prisoner's file"; or (3) that the Board failed to comply with any of the several other procedural requirements contained in Ala.Code § 15–22–36. Ala.Code § 15–22–38 provides that the "limitations and restrictions on the powers of the board or the members thereof *shall be strictly construed*". (emphasis supplied). Ala.Code § 15–22–40 provides that any "restoration of civil and political rights granted, ordered or made contrary to the provisions of this article shall *be null and void and have no force or effect*". (emphasis supplied).

In the instant case, the United States has graciously not attempted to collaterally attack the document of January 29, 1979, but the United States does take the position that on January 29, 1979, the Board of Pardons and Paroles lacked the authority

to restore to Swanson the right to possess a pistol. Therefore, the United States contends that the document neither accomplished a *complete* restoration of every possible right enjoyed by other Alabama citizens, nor intended to accomplish it.

It is without question that Ala.Code § 15–22–40, above quoted, prohibits the Board from exceeding its strictly limited authority. In 1979, the Board could neither legislate nor act contrary to the legislation which created it and gave it a limited scope of operation.

■ On January 29, 1979, Ala.Code § 13A–11–72(a) provided, and still provides:
*No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control.*

(emphasis supplied).

Prior to January 29, 1979, Alabama's courts had made quite clear that this code section cannot be obviated or avoided by any pardon or restoration of political and civil rights no matter how broad its terms. *See Mason v. State,* 39 Ala.App. 1, 103 So.2d 337 (1956), *aff'd* 267 Ala. 507, 103 So.2d 341 (1958), *cert. denied,* 358 U.S. 934, 79 S.Ct. 323, 3 L.Ed.2d 306 (1959). Furthermore, the crime of manslaughter, for which Swanson had been convicted in 1970, is a "crime of violence" under the law of Alabama, and if manslaughter were not a "crime of violence", Swanson's subsequent conviction of larceny in 1974 qualifies as a "crime of violence" under the law of Alabama. *Dunaway v. State,* 50 Ala.App. 200, 278 So.2d 200, *writ denied,* 291 Ala. 93, 278 So.2d 205 (1973).

■ In his attack on this indictment, Swanson relies primarily on *United States v. Kolter,* 849 F.2d 541 (11th Cir.1988), a case decided after a 1986 amendment of the federal statute which makes it a crime for a convicted felon to possess a firearm. This amendment redefined the term "crime punishable by imprisonment for a term exceeding one year", as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. In a conviction which has been expunged, or set aside or for which a person has been pardoned or has civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

This court is *bound* by *U.S. v. Kolter,* which is a strong case in Swanson's favor. In *Kolter,* the Eleventh Circuit flatly held that a felon whose civil rights had been restored prior to 1986, when that restoration by its terms had not limited his right to bear arms, etc., etc., etc., was immunized by the 1986 amendment from any federal prosecution for possessing a firearm. On its face, this holding seems to cover Swanson's case like a blanket, and perhaps it does. However, there are severe problems with *Kolter* as the court considers its possible application to the instant case. There are several questions here present, not addressed in *Kolter* and which give this court considerable trouble. They will now be discussed by this court, but not necessarily in the order of their significance.

*The First Problem.*

The first distinction between *Kolter* and the instant case is that Mr. Kolter's conviction for possessing a gun was based on a prior felony conviction in Georgia and not in Alabama. For aught appearing, Georgia has no statutory equivalent to Alabama's § 13A–11–72 prohibiting a convicted felon from possessing a pistol, and no equivalent to Alabama's § 15–22–40 limiting the authority of those in charge of the pardoning process from restoring that right and providing that any grant beyond the express powers of the pardoning agency is null and void. As the district court said in *U.S. v. Erwin,* 723 F.Supp. 1285 (C.D.Ill.1989), on its way to an affirmance by the Seventh Circuit:

The only possible relevance *Kolter* could have here is by way of dicta, but in fact

even that is absent. The restoration of rights in *Kolter* was apparently deliberately and affirmatively accomplished pursuant to the Youthful Offender Act, and *apparently it included the state right to possess firearms and, of course, contained no express limitation upon possessing firearms.*

723 F.Supp. 1294 (emphasis supplied).

In affirming the district court, the Seventh Circuit in *U.S. v. Erwin,* 902 F.2d 510 (7th Cir.1990), said:

Illinois does not wipe out the conviction for purposes of its recidivist laws. *It also does not restore the right to own or carry guns.* Ill.Rev.Stat. ch. 38 ¶ 24–1.1 makes it a crime for a previously convicted felon to possess a firearm.

Erwin contends that ¶ 1005–5–5(d) restores his civil rights for purposes of § 921(a)(20). Because ¶ 1005–5–5 does not "expressly provide[ ] that [he] may not ship, transport, possess, or receive firearms", Erwin argues, the last sentence of § 921(a)(20) means that he is not a convicted felon for federal purposes even though Illinois still considers him one. *Although this is a clever argument, it is not a plausible interpretation of a statute that is designed to require federal rules to track state law.*

\*   \*   \*   \*   \*   \*

*United States v. Kolter,* 849 F.2d 541 (11th Cir.1988), on which Erwin relies, dealt with a pardon that restored all civil rights, *including an entitlement to possess weapons. Illinois does not allow Erwin to possess guns, and that is that.*

902 F.2d at 512, 513 (emphasis supplied).

Illinois' law is like Alabama's law rather than Georgia's law. There are some collateral expressions by the Seventh Circuit in *Erwin* with which this court disagrees, but this court certainly agrees with the Seventh Circuit's way of distinguishing *Kolter,* a distinction which just as clearly applies to Swanson's case. Swanson's case is closer on its facts to *United States v. Cassidy,* 899 F.2d 543 (6th Cir.1990), than to *Erwin,* and certainly closer than to *Kolter.* In *Cassidy,* the Sixth Circuit, shortly before *Erwin,* reversed a trial court for dismiss-

ing federal counts which had charged the defendant with being a convicted felon and possessing a firearm. The trial court being reviewed had held, as the Eleventh Circuit did in *Kolter,* that because the state's restoration certificate did not contain the express and precise language "that the person may not ship, transport, possess, or receive firearms", 18 U.S.C. § 921(a)(20) insulated the recipient from prosecution under 18 U.S.C. § 922(g)(1). After carefully outlining the legislative history of the 1986 amendment, and after acknowledging federal deference to state law on the issue of what constitutes a conviction, the Sixth Circuit pointed out that Ohio Rev.Code § 2923.13 provides:

Unless relief from disability is provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if ... [s]uch person is under indictment or has been convicted of any offense involving the illegal possession, use, sale, or administration, distribution, or trafficking in any drug of abuse....

899 F.2d at 550, n. 15.

This Ohio statute is, as was the Illinois statute discussed in *Erwin,* strikingly similar to Ala.Code § 13A–11–72. Based on this "express" statute, the Sixth Circuit reversed, holding that "we must look to the *whole of state law* of the state of conviction to determine whether the 'convicted felon' ... is entitled to exercise the privileges of *shipping, transporting, possessing* or *receiving a firearm*", and "that *because he was expressly restricted under state law from possessing a firearm,* he has been convicted of a 'crime punishable by imprisonment for a term exceeding one year' for purposes of 18 U.S.C. § 921(a)(20)." 899 F.2d at 549 and 550. (emphasis supplied).

Neither party in the instant case has cited *United States v. Traxel,* 914 F.2d 119 (8th Cir.1990), perhaps because *Traxel* was so recently decided. *Traxel* dealt with a very similar problem under the law of Minnesota, in which Minn.Stat. § 624.713 subd. 1(b), provides:

The following persons shall not be entitled to possess a pistol:

   \*     \*     \*     \*     \*     \*

a person who has been convicted in this state or elsewhere of a crime of violence unless ten years have elapsed since the person has been restored to civil rights or the sentence has expired, whichever occurs first, and during that time the person has not been convicted of any other crime of violence.

The Eighth Circuit, joining the Sixth in *Cassidy* and the Seventh in *Erwin,* rejected the Eleventh in *Kolter,* and held:

As noted above, the language of section 921(a)(20) requires a limitation on the right to possess firearms to be included in the same document restoring the convicted felon's civil rights following a felony conviction for that conviction to be counted as a previous violent felony under section 924(e)(1). *See United States v. Erwin,* 723 F.Supp. at 1297; *supra* note 7. This reasoning assumes, however, that the civil rights restored to a convicted felon under state law are coextensive with the civil rights Congress had in mind in enacting section 921(a)(20). Section 624.713 subdivision 1(b) provides evidence that since 1975, those civil rights restored to convicted felons by Minn.Stat. § 609.165 exclude the right to possess firearms. *Because the right to possess firearms is the civil right with which section 921(a)(20) is concerned, Minnesota felony convictions for which civil rights were restored after the enactment of section 624.713 subdivision 1(b) do not constitute convictions "for which a person has had civil rights restored" within the meaning of section 921(a)(20).*

914 F.2d at 124 (emphasis supplied).

This is the same reasoning which was employed earlier not only in *Cassidy* and in *Erwin* but in *Presley v. United States,* 851 F.2d 1052 (8th Cir.1988). If this reasoning were applied to Swanson, his Alabama felony conviction, which occurred while Ala. Code § 13A–11–72 was in effect (*as it still is* ), could not have constituted a conviction "for which a person has [later] had civil rights restored" within the meaning of § 921(a)(20).

*The Second Problem.*

■ Perhaps because Alabama's Board of Pardons and Paroles lacks the authority to restore all of the rights catalogued in § 921(a)(20), there was no evidence offered on December 7, 1990, to the effect that the form of restoration certificate the Board has used after the 1986 amendment has *ever* contained the talismanic words, "except that you shall not have the right to 'ship, transport, possess, or receive firearms' ". There is nothing in the law of Alabama which would give the slightest suggestion that the Board can employ such expansive language as a limitation on any restoration of rights. The Board was never granted the power to pardon with arbitrary limitations of its choosing. Alabama's pardoning document obviously *can* contain a reference to § 13A–11–72, and thus can expressly prohibit the possession of a pistol, but such language, if employed, would not comply with § 921(a)(20), that is, if *Kolter* is correct in finding it necessary to track the precise language of § 921(a)(20) in order to maintain an ex-felon's exposure to prosecution under § 922(g)(1), even in a jurisdiction with a statute like § 13A–11–72. If *Kolter* is carried to its logical conclusion, it will require the Alabama legislature to express by statute whether or not it wants in the future to grant permanent amnesty to all of Alabama's convicted felons insofar as any federal prosecution for possessing a firearm is concerned. The principle of federalism does not allow Congress to tell Alabama what it must say in a document granting a pardon to its citizen for a violation of a criminal statute. Put another way, does *Kolter* mean that any jurisdiction which issues a pardon must expressly limit the recipient's right to *"ship "* as well as to *"possess "* a firearm if that jurisdiction does not want the convicted felon thereafter to be free to possess a firearm under federal law? If this was the intent of *Kolter* and of Congress, it certainly is not yet understood by Alabama's authorities,

and the confusion is understandable. Meanwhile, the Alabama Board can no more grant a restoration of rights to the exclusion of the right to "ship" a hunting rifle than it can exclude the recipient's right to ship a pen knife or to get married.

### The Third Problem.

What about the anomaly which obviously appears if a convicted felon is pardoned by the use of a routine printed form on one day and another convicted felon receives his pardon the next day on a revised form complying literally with § 921(a)(20) by using its exact language? Would not an "equal protection" problem inhere in such deliberate disparate treatment? It is a well recognized principle of statutory construction that statutes should be construed, if possible, so as to avoid any question of their constitutionality. *McCullough v. Commonwealth of Virginia*, 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898). Another constitutional problem appears if, instead of the distinction occasioned by a formal, intentional change in forms between the dates on two otherwise identical forgivenesses, a distinction arises because of clerical or typographical error which could later make a crucial difference between guilt and innocence in a federal court under § 922(g)(1). If the Board's clerk, by innocent mistake, should include the 1986 amendment's magic language in one certificate but should leave it out in another, both certificates being issued on the same day, one recipient ostensibly would be immune under § 922(g)(1), while the other would be vulnerable and carted off to a federal prison. If construed literally, § 921(a)(20) could either criminalize or decriminalize conduct based on something over which the accused has no control whatsoever, and which may very well be the product either of the inadvertence or of the overzealousness of a mere clerk. The unfairness of this possibility may not implicate "equal protection" because it would not be intentionally disparate treatment, but it certainly would implicate substantive "due process".

### The Fourth Problem.

What would be the result in this case, or one like it, if after the restoration document is delivered, but before an alleged possession of a firearm by the ex-felon, the Board, or other authorized state agency, should write the recipient a letter *"expressly"* pointing out that the certificate was not intended to permit the recipient to possess a firearm, etc., etc., etc., and warning the recipient immediately to relinquish possession of any firearm which may mistakenly be in his possession because the talismanic language had been inadvertently left out? Is the state stuck with its mistake forever, that is, if it made one in the first place? As this court listened to the testimony of Mr. Walton, who is perhaps the single most knowledgeable official presently connected with Alabama's Board of Pardons and Paroles, the court concluded that the Board for which Mr. Walton works simply does not know what to do in light of *Kolter*. If Alabama, after the 1986 amendment, wanted to amend or to withdraw what it may have done *prior* to 1986 out of simple ignorance, it may not have any way to do it as long as *Kolter* stands in the way.

### The Fifth Problem.

In *Erwin*, the Seventh Circuit in collateral language seems slightly to disagree with the Sixth Circuit in *Cassidy* in that *Erwin* focuses on possible unfairness inhering in a situation in which a person may be misled into believing that *all* of his civil rights have been restored because the written certificate does not expressly contain appropriate caveats or red flags. However, the certificate which here restored whatever civil and political rights could be restored to Swanson by its very terms pointed out that it was issued "in compliance with the authority vested in the State Board of Pardons and Paroles by the Constitution and the Laws of the State of Alabama". This language was designed to impart to the recipient the fact that the Board was not purporting to restore any rights that it had no authority to restore. The certificate can honestly be described as one containing an *"express"* reservation of

rights. Furthermore, the general rule has always been that persons are presumed to know the law applicable to their affairs, so that every document need not have a law school lecture attached in order to explain all possible legal nuances.

One of the exhibits received into evidence on December 7, 1990, is entitled "Manual for Probation and Parole Officers". (Court's Exhibit 1). *Inter alia,* this Alabama manual provides:

> *Category 6*—Applicant who was convicted in a state other than Alabama. A person convicted in a state other than Alabama should make his initial application for restoration to the state in which he was convicted. If that state accepts jurisdiction and either grants or denies restoration, the action will be valid and binding in Alabama. If the state in which the person was convicted does not accept jurisdiction, and the person is a legal resident of Alabama, he may then file application with the Alabama Board of Pardons and Paroles.
>
> When investigating an applicant in this category, a complete legal and social history information investigation is conducted. The Central Office will secure details of the disqualifying offense from the appropriate state. Otherwise, follow the basic investigation outline.

Assuming *arguendo* that the Board knew what it was doing when it published this manual and that it can do what it thought it can do, it can restore the civil and political rights of an *Alabama* resident in *Alabama,* even though his civil and political rights were lost by virtue of a felony conviction in another state. If a Congressional purpose for § 921(a)(20) was to avoid misleading or "setting up" the recipient of a restoration of rights, the poor recipient of an ostensibly full pardon from the Alabama Board after his felony conviction in Georgia (*a la Kolter*), could lead to his being severely shocked, because § 921(a)(20) only deals with a pardon *issued by the jurisdiction in which the conviction actually occurred.* If Mr. Kolter had moved to Alabama from Georgia and thereafter had received what appeared on its face to be a full and complete pardon, even a pardon which exceeded the Board's statutory authority by reciting the entire litany contained in § 921(a)(20), he could still have been bushwhacked by a federal prosecutor, because § 921(a)(20) would not have helped him.

It would be even more ironic and potentially disastrous if the Alabama Board began to take seriously the permission granted it by the Supreme Court of Alabama in *Hogan v. Hartwell,* 242 Ala. 646, 7 So.2d 889 (1942), which allows the Board to restore the civil and political rights of an Alabama resident convicted of a felony *in federal court.* If the Board should purport to issue a full restoration of rights to a felon convicted in federal court using the same broad brush form it used in restoring Swanson's rights, would ignorance and possible misleading effect constitute the excuse which *Kolter* would indicate that Congress intended to recognize in § 921(a)(20) as a defense? This would be a reverse perversion of the concept of federalism.

### Conclusion

This court has no doubt whatsoever that the Board of Pardons and Paroles of the State of Alabama, neither in 1979, nor at any other time, intended to restore to Swanson the right to possess a pistol. It did not do what it could not do. Nevertheless, because the Eleventh Circuit in *Kolter* seems to hold broadly that the United States in 1986 retroactively granted the right to Swanson to carry a pistol as a matter of federal criminal law, and because jeopardy has not yet attached in the instant case, the court will grant Swanson's motion to dismiss the indictment strictly on the basis of *Kolter,* but simultaneously encourages the United States to appeal to the Eleventh Circuit and, if necessary, to the Supreme Court, not only to obtain clarification of the questions which were not addressed in *Kolter* and which infect this case, but to resolve the clear conflict which exists between the Sixth Circuit, Seventh, and Eighth Circuits on the one hand, and the Eleventh Circuit on the other. The State of Alabama, which was represented on December 7, 1990, in this court by the

General Counsel for the Board of Pardons and Paroles, may wish to participate *amicus curiae* in any such appeal, inasmuch as the State said to this court that it would join *amicus* in the event this court should certify any questions to the Supreme Court of Alabama. Unless some crucial matters of wide concern are cleared up by an appeal, the Board may in future be sorely tempted to adventure beyond its authority in an effort to accommodate to § 921(a)(20) so as to keep Alabama's ex-felons from thinking they can carry firearms in Alabama. Such an extra-legislative effort might work, but, again, it probably would create more problems than it would solve.

A separate, appropriate order will be entered.