636 So.2d 1246 (1993)
Ex parte Thomas Edward TAYLOR.
(Re Eddie Taylor
v.
State).
1920698.
Supreme Court of Alabama.
September 10, 1993.
William J. Baxley and Randy James of Baxley, Dillard, Dauphin & McKnight, Birmingham, for petitioner.
James H. Evans, Atty. Gen., and Cecil G. Brendle, Jr., Asst. Atty. Gen., for respondent.
SHORES, Justice.
We granted certiorari review in this case to determine whether § 13A-11-72, Code of Ala.1975, which prohibits a convicted felon from possessing a pistol, is a strict liability statute or whether a convicted felon who is charged with possessing a firearm may raise the defense of self-defense. We hold that he can. We reverse the judgment affirming Taylor's conviction and remand with instructions.
The petitioner, Thomas Edward Taylor, has placed the following facts before us by way of his petition and a Rule 39(k), A.R.App.P., statement of facts. Taylor is 41 years old, has been employed by the City of Gadsden for 16 years, and is presently its director of public works. Before working for the city, he worked for the sheriff's department, and he is still an honorary deputy sheriff.
In the fall of 1989, the city garbage workers of Gadsden were on strike. During that time, because of threats of violence against him and his family, Taylor carried with him in his truck a pistol belonging to his brother. The gun was in the truck on the night of October 5, 1989, when he and his brother were accosted by a group of strikers while they were at a service area of a shopping mall where Taylor maintained the grounds. The strikers drove up "cussing and screaming" and swinging baseball bats and clubs; one of the strikers had a gun. The strikers accused Taylor and his brother of picking up garbage in defiance of the strike. The Taylors denied that they were picking up garbage and asked the strikers to let them go. The strikers refused. Taylor pulled the gun and gave it to a man who worked at the theaters in the mall, asking him to hold it on the strikers until the he could telephone the police. Taylor went into the mall and telephoned the police, who came and took him home and remained with him for some time. Thereafter, the mayor had Taylor taken out of town for his safety.
In December 1989, Taylor was indicted and charged with violating § 13A-11-72(a), which prohibits persons convicted of a felony from possessing a pistol. The indictment was based upon the fact that in 1976, when Taylor was 24 years old, he had pleaded guilty to, and had been convicted on, a charge of burglary.
During Taylor's 1989 trial, the judge refused to allow Taylor to raise the defense of self-defense and to introduce evidence that he had appeared before the State Board of Pardons and Paroles to seek a pardon from *1247 the burglary conviction and that the Board could find no record of a conviction. The trial judge's ruling was based upon the Court of Criminal Appeals' holding in Johnson v. State, 620 So.2d 661 (Ala.Crim.App.1991). In Johnson, the Court of Criminal Appeals cited Mason v. State, 39 Ala.App. 1, 103 So.2d 337 (1956), as supporting the proposition that a pardon does not destroy the effect of § 13A-11-72. The holding in Mason has now been specifically overruled by State ex rel. Sokira v. Burr, 580 So.2d 1340, 1344-45 (Ala.1991). This Court affirmed Johnson v. State by an opinion of May 15, 1992; however, this Court withdrew its May 15, 1992, opinion, and this Court's final opinion in the Johnson case does not hold that § 13A-11-72(a) is a strict liability offense. See Ex parte Johnson, 620 So.2d 665 (Ala.1993).
Taylor cites us to cases from the courts of Florida and Louisiana, holding that this offense is not a strict liability offense; we are persuaded by the reasoning of those courts. The Supreme Court of Louisiana has held that self-defense is a valid defense to the charge of possessing a firearm:
"We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such a situation justification is a defense to the charge of felon in possession of a firearm."
State v. Blache, 480 So.2d 304 (La.1985). In Mungin v. State, 458 So.2d 293 (Fla.Dist.Ct. App.1984), the Florida District Court of Appeals reversed a lower court's judgment concerning the presentation of evidence (in this case the weapon was a knife) as to self-defense, stating:
"The determination of whether the accused committed the offense charged, acting in his own defense, is a matter for consideration by the jury, not the trial judge. [Citations omitted.] The jury was entitled to consider the testimony concerning the recent events which led to Mungin's temporary possession of the knife. Such testimony clearly tended to demonstrate that Mungin acted in self-defense."
Id. at 295.
For the reasons stated above, the judgment is due to be reversed and the cause remanded for the Court of Criminal Appeals to set aside the conviction and order a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
I concur in this judgment because I believe it comports with legislative intent. Even though I cannot agree that the statute forbidding a convicted felon to possess a pistol requires a showing of a specific intent or scienter, I do agree that the defense of self-defense is available in what I consider to be a public welfare crime.
As the author of Ex parte Harper, 594 So.2d 1181 (Ala.1991), cert. denied, ___ U.S. ___, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992), I discussed the distinctions between strict liability crimes and those requiring the showing of a specific intent:
"In United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), the defendants demurred to an indictment charging them with a violation of the Narcotic Act on the ground that the indictment made no mention of the intention with which the defendants had acted. The indictment there, like the indictment in this case, tracked the language of the statute. The lower court had sustained the demurrer and quashed the indictment. The Court held:
"`While the general rule at common law was that the scienter was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition did not in terms include it (Reg. v. Sleep, 8 Cox C.C. 472), there has been a modification of this view in respect to prosecutions under *1248 statutes the purpose of which would be obstructed by such a requirement. It is a question of legislative intent to be construed by the court. It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 666-67, 54 L.Ed. 930, in which it was held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide `that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se. Commonwealth v. Mixer, 207 Mass. 141 [93 N.E. 249]; Commonwealth v. Smith, 166 Mass. 370 [44 N.E. 503]; Commonwealth v. Hallett, 103 Mass. 452; People v. Kibler, 106 N.Y. 321 [12 N.E. 795]; State v. Kinkead, 57 Conn. 173 [17 A. 855]; McCutcheon v. People, 69 Ill. 601; State v. Thompson, 74 Ia. 119 [37 N.W. 104]; United States v. Leathers [26 F.Cas. 897], 6 Sawy. 17; United States v. Thompson, 12 Fed. 245; United States v. Mayfield, 177 Fed. 765; United States v. 36 Bottles of Gin, 210 Fed. 271; Feeley v. United States, 236 Fed. 903, Voves v. United States, 249 Fed. 191. So, too, in the collection of taxes, the importance to the public of their collection leads the legislature to impose on the taxpayer the burden of finding out the facts upon which his liability to pay depends and meeting it at the peril of punishment. Regina v. Woodrow, 15 M. & W. 404; Bruhn v. Rex, [1909] A.C. 317. Again where one deals with others and his mere negligence may be dangerous to them, as in selling diseased food or poison, the policy of the law may, in order to stimulate proper care, require the punishment of the negligent person though he be ignorant of the noxious character of what he sells. Hobbs v. Winchester Corporation, [1910] 2 K.B. 471, 483.'"
594 So.2d at 1183-1184. Although, as the majority notes, "this Court's final opinion in the Johnson case does not hold that § 13A-11-72(a) is a strict liability offense," neither does it hold to the contrary. Rather, it is the classification of this crime as a "public welfare offense" that provides the distinguishing factor that supplies for Taylor an opportunity to raise the defense of self-defense. The United States Supreme Court has stated:
"`[Public welfare] cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no *1249 mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving.'"
Morissette v. United States, 342 U.S. 246, 255-56, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952), as quoted in Ex parte Harper, 594 So.2d at 1186.
Section 13A-11-73 forbids a convicted felon to own or possess a pistol; that section appears under the heading "Offenses Against Public Order and Safety." My reading of the statute does not reveal that the legislature required a showing of a specific intent or scienter for this offense; however, I do agree with the majority that the defense of self-defense is available to one charged with this crime against the public welfare.