*216 OPINION OF THE COURT
Herbert J. Adlerberg, J.
THE FACTS
Petitioner moves pursuant to sections 701 and 702 of the Correction Law granting her relief from civil disabilities incurred as a consequence of her convictions in the United States District Court upon a multicount indictment of the following crimes: conspiracy to commit tax offenses or mail fraud or to defraud the Internal Revenue Service (18 USC § 371); 3 counts of income tax evasion (26 USC § 7201); 3 counts of willfully subscribing false personal income tax returns (26 USC § 7206 [1]); 16 counts of aiding and assisting the filing of false corporate and partnership tax returns (26 USC § 7206 [2]); and 10 counts of mail fraud which alleged a scheme to defraud the taxing authority of New York State, based on the mailing of New York State personal income tax returns and corporate tax reports (18 USC § 1341). The petitioner was sentenced upon these convictions to four years’ imprisonment, followed by three years’ probation, with 250 hours of community service during each year of probation, and a $7,152,000 fine. Additionally, she was ordered to pay restitution to the State of New York in the amount of $469,300 (unpaid taxes) plus interest, and to the Federal Government $1,221,900 in unpaid taxes, plus penalties and interest, plus the cost of the prosecution. She is currently free on $25,000,000 bail pending her appeal.
Section 126 (1) of the Alcoholic Beverage Control Law prohibits a person who has been convicted of a felony from participating in the distribution of alcoholic beverages, unless the licensee has been granted relief from civil disabilities. (Matter of Taurisano v State Liq. Auth., 284 App Div 124 [3d Dept 1954].)
The petitioner, Leona M. Helmsley, is an officer and director in the corporate entities which own the following five hotels which hold liquor licenses: the Helmsley Plaza Hotel; the Windsor Hotel; the Park Lane Hotel; the Carlton House; and, the Harley Hotel. It is her contention that all five hotels serve alcoholic beverages to their visitors and guests since many travelers, particularly businessmen and foreign tourists, will not stay in a hotel or eat in a restaurant that does not serve wine and liquor. She further contends that travel generally, and the hotel and restaurant industry generally is one of New *217 York City’s major employers, and providers of income to employees, and attendant revenues to the city and State, and that the availability of first class hotels is also one of the things that makes New York City a world class business center. She further contends that the five hotels employ approximately 1,400 employees and that the hotels have paid New York City approximately $24,430,000 in the form of real estate, occupancy, and sales taxes during the years 1988-1991.
The petitioner argues that if their liquor licenses are mandatorily revoked pursuant to section 126 (1) of the Alcoholic Beverage Control Law, the hotels will in all probability have to be closed since they will no longer be able to attract sufficient guests to support their large staffs. They will then have to be sold at distress prices. This will create a disastrous ripple effect which, because of the present state of the market, will drive down the value of every other hotel in the city which in turn drives down their tax assessments and the value to owners and lenders who hold mortgages on them. A massive decline in the value of hotels in the city will also be reflected in a massive decrease in the real estate taxes paid by all hotels in the city. Additionally, closure of the hotels would force many of their employees to seek public assistance, adding to the further financial burden of a city already reeling in fiscal distress.
The petitioner claims that she has been an able and effective hotelier, and that since her husband, Harry B. Helmsley, is ill and has no other close relatives, she must remain in charge of the hotels, and that in order to permit her to remain in her position as an officer and director and owner of these hotels, and to avoid corporate chaos and possible loss of jobs, an order granting a certificate of relief from civil disabilities is imperative.
The petitioner makes the point that while this court has the power to grant total relief from civil disabilities, her application is confined to relief from automatic and mandatory revocation of the liquor licenses granted by the Alcoholic Beverage Control Commission for the use of the hotels that may otherwise result from the petitioner’s convictions.
The United States Attorney for the Southern District of New York strenuously opposes the petitioner’s application. He recites the fact that after a lengthy trial, a jury found her guilty of a massive scheme to defraud the United States and New York State by intentionally cheating on her Federal and *218 State income taxes, in that she caused various business enterprises which she and her husband controlled to pay for certain lavish personal expenses by never declaring the value of those expenses as income on her personal tax returns. Further, she fraudulently treated those personal expenses as business expenses and deducted them on various corporate tax returns which she filed. The United States Attorney further points out the fact that her conviction on those charges has since been affirmed on appeal.
The United States Attorney argues that under New York law, Mrs. Helmsley, like any other convicted felon, is subject to certain civil disabilities." One of those is the loss of her New York State liquor licenses. By making the instant application Mrs. Helmsley is requesting "special treatment” which he implies would not be available to anyone else. He further argues that if she loses the licenses she may have to give up control of her hotels, and sell them to others who do have valid liquor licenses, and casts to the realm of gross speculation her argument that such a transfer of control, or sale of the hotels would have the devastating impact she claims it would have. He flatly states that if collateral consequences flow from a conviction for a felony in New York State, then she must bear those consequences, and this is especially so since petitioner still professes her innocence and has not shown "remorse or contrition.”
THE LAW
Correction Law § 701 provides that a certificate of relief from disabilities may be granted to relieve an eligible offender of any forfeiture or disability that is automatically imposed by reason of a felony conviction. The certificate may be limited to one or more enumerated forfeitures or disabilities. (Subd [1].) If a certificate of relief is obtained, the conviction is then not deemed to be a conviction within the meaning of any provision of law that imposes a disability to apply for or receive any license or permit. (Subd [2].) The certificate of relief shall not, however, prevent any administrative or licensing authority from exercising its discretionary powers to suspend, revoke, refuse to issue or renew any license. (Subd [3]; see also, Matter of Hodes v Axelrod, 70 NY2d 364.)
Correction Law § 702 provides that a certificate of relief may be issued at the time of sentencing or at any time thereafter upon a verified application made to the court in *219 which the conviction occurred. The court is empowered to grant a certificate if (a) the court imposed a revocable sentence (probation or a conditional discharge) or imposed a sentence other than one executed by commitment to an institution under the jurisdiction of the State Department of Correctional Services.
While Federal courts are not authorized to issue a certificate of relief, one may apply to the State Supreme Court to obtain a certificate of relief from a Federal conviction. In United States v Da Grossa (446 F2d 902 [2d Cir 1971]), Da Grossa’s application to the Federal court for a certificate of relief after his Federal conviction was denied on the basis that the New York State Correction Law does not grant such power to the Federal courts. Thereafter, Da Grossa applied to the New York Supreme Court for a certificate of relief from his Federal conviction.
In Matter of Da Grossa v Goodman (72 Misc 2d 806 [Sup Ct, NY County 1972]), the court held that such relief from a Federal conviction was available under Correction Law § 702 and that to prohibit such relief in State court from a Federal conviction would violate the Equal Protection Clause of the New York Constitution, since a New York State resident convicted in a foreign jurisdiction should not be placed in a worse position than he would have been had he been convicted in a New York State court. It should also be noted that Da Grossa was sentenced to one year and one day, the execution of the sentence was then suspended and he was placed on probation, thus creating a revocable sentence and bringing Da Grossa’s application within the ambit of section 702 of the Correction Law.
Section 703 of the Correction Law covers those situations (a) where the offender was sentenced to an institution under the jurisdiction of the State Department of Correctional Services (i.e., received felony time), or (b) where the offender is a resident of this State and the judgment of conviction was rendered by a court in any other jurisdiction. In those situations the State Board of Parole is granted the power to issue certificates of relief from disabilities.
An examination of the above sections makes it apparent that the petitioner’s present application is premature. The statutory scheme dictates that those offenders who are convicted and receive felony time must make their application to the State Parole Board, and this is so whether the conviction *220 arose in this jurisdiction or any other jurisdiction. Additionally, that statutory scheme makes sense. Where the offender is sentenced to a revocable sentence or to a short definite term, the court is best able to monitor through the Probation Department or a like agency, the offender’s progress toward rehabilitation and the necessity for the issuance of a certificate of relief. Where the offender is sentenced to felony time, the State Parole Board is better equipped to monitor the offender’s progress and needs.
Despite the statutory scheme, petitioner argues that based upon the Da Grossa decision (supra), this court has the power to issue a certificate of relief in this case. This argument is flawed and the petitioner’s reliance upon Da Grossa is misplaced. As stated above, Da Grossa’s sentence was a revocable sentence, and clearly within the ambit of Correction Law § 702 which grants the power to issue certificates to the court. To accept petitioner’s argument in a case in which she received a sentence of four years would produce an absurd result. It would, in essence, give her greater rights than she would possess if her conviction had been rendered by a New York State court (namely, the right to apply for an immediate court-issued certificate), the very result which Da Grossa sought to prevent.
For the foregoing reasons, the petitioner’s application is denied.