896 F.Supp. 85 (1995)
UNITED STATES of America
v.
Collin K. CRAIG, Defendant.
Crim. A. No. 95-CR-52.
United States District Court, N.D. New York.
August 8, 1995.
*86 Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY, (Charles E. Roberts, Assistant United States Attorney, of council), for the U.S.
Edward Z. Menkin, Syracuse, NY (Edward Z. Menkin, of counsel), for Collin K. Craig.

MEMORANDUM-DECISION AND ORDER
POOLER, District Judge.
Defendant Collin K. Craig moved pursuant to 18 U.S.C. § 924(d)(1) for the return of 10 rifles, five shotguns and assorted ammunition that the government seized in accordance with a search warrant on January 12, 1995. For the reasons that follow, the motion is denied.

BACKGROUND
On June 12, 1984, Craig was convicted after a bench trial in New York State Supreme Court on 62 counts for various crimes, such as grand larceny, burglary, criminal mischief, official misconduct, and criminal possession of stolen property. As a result of his conviction, Craig was imprisoned in a state penitentiary and paroled on December 11, 1985. On January 12, 1995, agents of the federal Bureau of Alcohol, Tobacco and Firearms executed a warrant authorizing the search for weapons in Craig's Watertown home. During the search, agents seized 10 rifles, five shotguns and assorted ammunition. Craig was arrested on January 12, 1995.
Craig subsequently was indicted on February 15, 1995, and charged with two violations each of 18 U.S.C. §§ 922(g)(1) and 924(d)(1). The first count involved the illegal possession of a Ruger Model 77/22.22 caliber rifle on or about April 1, 1991, and the second count involved the illegal possession of a Savage 30-30/12-gauge shotgun/rifle on or about April 1, 1991. After a jury trial, Craig was acquitted of both counts on April 18, 1995. At the close of trial, defense counsel made an oral motion for return of all weapons seized by the government. Craig subsequently filed a written affidavit in support of the motion. Oral argument took place on August 7, 1995.

DISCUSSION
Craig argues that Section 924(d)(1), 18 U.S.C. § 924(d)(1), requires return of his weapons because he was acquitted of the firearms charges. Craig further argues that he legally can possess the firearms previously seized because he obtained a certificate of relief from disabilities on June 11, 1991, from Judge Walter T. Gorman of the New York State Supreme Court (the "June 11 Certificate"). The government responds in opposition that the June 11 Certificate is invalid and that Craig has not been relieved of the civil disability prohibiting his possession of firearms.
Section 924(d)(1) authorizes the forfeiture of "[a]ny firearm or ammunition involved in or used in any knowing violation" of Section 922(g). 18 U.S.C. § 924(d)(1). The statute also states that "upon acquittal of the owner or possessor ... the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a *87 person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law." Id. (emphasis added). Consequently, Craig's acquittal is not dispositive, and I must determine whether Craig legally can possess firearms.
Upon his state criminal conviction, Craig lost the civil right to possess firearms, but that right may be restored by an appropriate certificate of relief from disabilities. N.Y. Correct. Law § 701(1) (McKinney 1987). Craig relies on the June 11 Certificate as proof that he can possess firearms legally. On its face, the certificate permanently relieves Craig of "all disabilities and bars to employment, excluding the right to be eligible for public office." Craig contends that Judge Gorman validly issued the certificate pursuant to N.Y. Correct. Law § 702(1), which provides that "[a]ny court of this state may, in its discretion, issue a certificate of relief from disabilities to an eligible offender for a conviction that occurred in such court, if the court either (a) imposed a revocable sentence or (b) imposed a sentence other than one executed by commitment to an institution under the jurisdiction of the state department of correctional services." Id. § 702(1). There is no dispute that Judge Gorman was the judge who presided over Craig's state trial and sentencing.
However, the government contends that the June 11 Certificate nonetheless was invalid and without effect because Judge Gorman neither imposed a revocable sentence nor imposed a sentence under the jurisdiction of local correctional services as required by Section 702. According to the government, because Craig received a sentence committing him to state prison, he only may receive a certificate of relief from the state parole board under Section 703 of the New York Correction Law. Pursuant to Section 703(1), the "state board of parole shall have the power to issue a certificate of relief from disabilities to: (a) any eligible offender who has been committed to an institution under the jurisdiction of the state department of correctional services." Id. § 703(1). Therefore, the government states that Judge Gorman lacked authority to issue Craig a certificate of relief, the June 11 Certificate is invalid, and Craig remains under the civil disability preventing him from possessing firearms.
In further support of its position, the government supplied an affidavit from James V. Murray, Director of the Executive Clemency Bureau of the New York Division of Parole. In his affidavit, Mr. Murray confirms that Craig was convicted of a felony in state court and received a sentence to a state correctional facility. Aff. of James V. Murray of 6/5/95, at ¶ 3. Mr. Murray states further that the New York State Board of Parole issued Craig a certificate of relief from disabilities on March 31, 1986, (the "March 31 Certificate"), but this certificate did not restore Craig's privilege to possess firearms. Id. ¶ 4. Importantly, Mr. Murray states that Craig never received "an enlargement, enhancement, or modification" of his March 31 Certificate, so that he currently is unable to lawfully possess or own firearms.[1]Id. ¶¶ 5-6.
In support of his contention that the June 11 Certificate is valid, Craig posits three arguments. He argues first that the government is estopped from challenging the validity of the June 11 Certificate because the government did not indict Craig for weapons possession occurring after June 11, 1991, and did not argue at trial that such possession was illegal. Second, Craig contends that the June 11 Certificate enjoys a presumption of regularity and proper jurisdiction. Craig argues third that the state Supreme Court had jurisdiction to issue the June 11 Certificate. I will address each of these arguments.
Craig first contends that the government cannot challenge the validity of the June 11 Certificate now because it declined to do so during Craig's criminal trial. This argument clearly is without merit. Throughout the criminal proceedings, the government never conceded that the June 11 Certificate *88 was valid. Rather, the government specifically tailored the charges in the indictment to encompass the period prior to June 11 in an effort to eliminate any possible jury confusion regarding the certificate's legal significance. During trial, the government made no arguments regarding the validity of the June 11 Certificate because the certificate was irrelevant to the instant prosecution. See United States Trial Mem. of 4/5/95, at 4.
Craig's second argument also must be rejected. Even if it is true that the June 11 Certificate enjoys a presumption of regularity and proper jurisdiction, that presumption is not irrebuttable. The court may consider the facts in the record as well as the relevant statute to determine whether the June 11 Certificate in this case is valid. As discussed more fully below, the law as applied to the facts of this case compels the conclusion that Judge Gorman lacked jurisdiction to issue a certificate of relief to Craig. See In re: Application of Leona M. Helmsley, 152 Misc.2d 215, 575 N.Y.S.2d 1009, 1012 (N.Y.Sup.Ct.1991). In Helmsley, the state Supreme Court declined to issue defendant a certificate of relief because "the statutory scheme dictates that those offenders who are convicted and receive felony time must make their application to the State Parole Board, and this is so whether the conviction arose in this jurisdiction or any other jurisdiction." Id. The state Supreme Court thus recognized that under Section 703 it lacked jurisdiction to issue a certificate of relief from civil disabilities.
Craig finally argues that Section 702 of the state Correction Law applies because 61 of the 62 state sentences he received were for one year of imprisonment, and only one sentence involved his commitment to state prison. This argument lacks merit. There is absolutely no dispute that Craig was convicted of a felony and a received a sentence to a state correctional facility. That Craig also received lesser sentences does not negate this basic fact. Because commitment to a state prison triggers Section 703 of the Correction Law, I must apply its requirements to Craig's case.
From a policy standpoint, the statutory scheme's distinction between local and state prison sentences is sensible. As stated by the court in Helmsley, "[w]here the offender is sentenced to a revocable sentence or to a short definite term, the court is best able to monitor through the probation department or a like agency, the offender's progress toward rehabilitation and the necessity for the issuance of a certificate of relief, ... [but] [w]here the offender is sentenced to felony time, the State Parol Board is better equipped to monitor the offender's progress and needs." Helmsley, 575 N.Y.S.2d at 1012. I cannot ignore the language of Section 703 or the manner in which Sections 702 and 703 work together merely because Craig received sentences of different lengths.
Consequently, the clear language of the New York Correction Law compels the conclusion that Judge Gorman lacked authority to issue a certificate of relief from disabilities to Craig. The June 11 Certificate is invalid and without effect. I reach this conclusion independently of the opinion stated by Mr. Murray, but I note that my decision fully is supported by his affidavit. Because Craig was convicted of a felony and sentenced to imprisonment in a state prison, only the state Board of Parole has authority to issue him a certificate of relief from civil disabilities restoring his right to possess and own firearms. N.Y. Correct. Law § 703(1). There is no dispute that Craig has not received such a certificate from the state parole board. Thus, I cannot return the seized firearms to Craig because to do so would put him in violation of law. 18 U.S.C. § 924(d)(1).
In a letter to the court dated June 21, 1995, counsel for Craig contends that even if the June 11 Certificate was issued without actual authority, it still has legal effect and restored Craig's right to possess firearms. However, this is not the holding of the case defendant cites for support, United States v. Swanson, 753 F.Supp. 338 (N.D.Ala.1990), aff'd, 947 F.2d 914 (11th Cir.1991). In Swanson, the U.S. Court of Appeals for the 11th Circuit merely applied Alabama state law to determine whether defendant's certificate of relief restored his right to possess firearms. Swanson, 947 F.2d at 918. I, too, have applied state law  that of New York  to determine whether Craig's certificate of relief restored *89 his right to possess firearms. The problem in Swanson, however, was that the state courts' interpretation of Alabama law regarding restoration of civil rights changed during the course of the litigation, and the 11th Circuit grappled with the effect of that change. Id. at 917-18. I do not face a similar task here because New York courts consistently interpreted and applied New York Correction Law sections 702 and 703. For example, in Helmsley, the defendant was convicted of a felony and sentenced to state prison, so the court held that Section 703 applied to any request for relief from civil disabilities. Helmsley, 575 N.Y.S.2d at 1012. In another case, the defendant received a revocable sentence, so Section 702 applied to his request for relief from civil disabilities. DaGrossa v. Goodman, 72 Misc.2d 806, 339 N.Y.S.2d 502, 504 (N.Y.Sup.Ct.1972); accord Helmsley, 575 N.Y.S.2d at 1012.
Finally, during oral argument, counsel for Craig suggested that I release the seized weapons to Donna Craig, wife of Collin Craig. In support of this alternative, counsel relied on the language of Section 924(d)(1), which states that seized firearms shall be returned "to the owner or possessor or to a person delegated by the owner or possessor." 18 U.S.C. § 924(d)(1). This argument fails because of a fundamental principal of agency law, that is, a principal may not delegate to his agent or nominee authority which he himself does not possess. Restatement (Second) of Agency § 20 (1958). In other words, an "individual may not create an agent who has greater power than the individual himself possesses." Miner v. New York State Dep't of Correctional Servs., 125 Misc.2d 594, 479 N.Y.S.2d 703, 704 (N.Y.Sup. Ct.1984), aff'd, 70 N.Y.2d 909, 524 N.Y.S.2d 390, 519 N.E.2d 301 (1987). Thus, because Craig lacks authority to legally possess firearms, he cannot delegate such authority to any other person.

CONCLUSION
Craig cannot possess the seized firearms without being in violation of law because the appropriate state agency has not restored this right. Craig's motion for return of the weapons is denied.
IT IS SO ORDERED.
NOTES
[1] After Mr. Murray submitted his affidavit, Craig requested materials from Mr. Murray so that Craig could apply to the state Board of Parole for a modified certificate of relief. Letter from Edward Z. Menkin, Esq., to James V. Murray of 6/21/95. This request, however, has no bearing on my decision regarding Craig's motion.