**UNITED STATES of America,
Plaintiff,**

**v.**

**APPROXIMATELY 627 FIREARMS,
MORE OR LESS, Defendants.**

Civil No. 4:06–cv–337.

United States District Court,
S.D. Iowa.

Oct. 22, 2008.

Craig P. Gaumer, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

Alfredo G. Parrish, Tammy Marie Westhoff–Gentry, Parrish Kruidenier Dunn Boles Gribble Cook Parrish Gentry & Fisher LLP, Des Moines, IA, for Defendants.

### MEMORANDUM OPINION

RONALD E. LONGSTAFF, Senior District Judge.

THE COURT HAS BEFORE IT the Government's Verified Complaint for Forfeiture in Rem, seeking the forfeiture of 627 firearms seized from the property of Bela Hummel in Eldon, Iowa. An evidentiary hearing was held on September 8, 2008, with both the Government and Hummel filing briefs both before and after the hearing.[1] The issue is now considered fully submitted.

---

1. Hummel and the Government each filed pre-hearing briefs on September 3, 2008 and

## I. PROCEDURAL BACKGROUND

On March 21, 2006, pursuant to a federal search warrant, Hummel's property in Eldon, Iowa was searched by the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). 684 firearms were seized during the search. On July 18, 2006, the Government filed the present Complaint, seeking forfeiture of 627 of the seized firearms pursuant to 18 U.S.C. §§ 924(d)(1) and 983.[2] On August 28, 2006, Hummel filed a claim asserting an ownership interest in the seized firearms and seeking their return pursuant to 18 U.S.C. § 983.

On March 28, 2007, Hummel was charged in a two-count indictment. Count I charged Hummel with willfully engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), and Count II charged him with knowingly making a false statement or representation with respect to the information required by federal law to be kept in the records of a federally-licensed firearms dealer in violation of 18 U.S.C. § 924(a)(1)(A). Pursuant to a plea agreement, Hummel pled guilty to count one of the indictment on February 29, 2008. In exchange for his plea of guilty, the Government agreed to move to dismiss Count II of the indictment at sentencing. Plea Agreement at ¶ 2. The parties agreed that Hummel would be sentenced to a term of probation, and "ordered to forfeit those guns involved in the offense of conviction." Plea Agreement at ¶ 4(A).[3]

While negotiating Hummel's plea, the parties were unable to reach an agreement as to how many of the 627 firearms identified in the Government's complaint were involved in Hummel's offense and would be subject to forfeiture. Accordingly, the plea agreement provides that "the question of how many of the firearms seized from the defendant are subject to forfeiture will be submitted to the Court for an evidentiary hearing as soon as practicable so that it is resolved prior to sentencing, unless they reach a forfeiture agreement." *Id.* at ¶ 18.[4] No forfeiture agreement was reached.

The Government argues that each of the 627 firearms at issue were "involved in" Hummel's activities as unlicensed dealer of firearms, and are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 924(d)(1) and 983. The Government further con-

September 5, 2008, respectively. Due to time constraints at the evidentiary hearing, the Court permitted each party to file a post-hearing brief to address issues raised in the hearing. Hummel filed his post-hearing brief on September 22, 2008. The Government filed its post-hearing brief on October 6, 2008, to which Hummel filed a reply on October 8, 2008.

2. The Government's complaint particularly named and individually identified each of the firearms at issue. There is no allegation that Hummel was not in legal possession of the firearms at the time of their seizure.

3. The plea agreement includes an "Attachment A," which contains the "factual stipulations entered into between the parties, including the factual stipulations of the defendant's offense conduct relating to each subject offense." Plea Agreement at ¶ 14. "Attachment A" lists sixteen specific firearms which Hummel admittedly sold to undercover agents on eight different dates.

4. The plea agreement further provides that "this agreement does not preclude the government from pursuing any civil or administrative matters against the defendant, including, but not limited to, civil tax matters and civil forfeiture, which arise from, or are related to, the facts upon which this investigation is based." Plea Agreement at ¶ 12. The parties entered into a stipulation at the hearing, stating that they previously agreed that Hummel is free to contest the forfeiture of any and all of the 627 firearms at issue. Hearing Tr. at 75–76.

tends that even if the Court finds that any or all of the 627 firearms at issue are not subject to forfeiture, they cannot be returned to Hummel due to his status as a convicted felon. Hummel argues that the 627 firearms at issue are not subject to forfeiture, as the Government failed to meet its burden to establish that they were "involved in" Hummel's offense. In the alternative, Hummel argues that even if the Court finds that the 627 firearms at issue were involved in his offense, the corresponding forfeiture would constitute an excessive fine in violation of the Eighth Amendment to the United States Constitution. Hummel acknowledges that he cannot legally possess any of the 627 firearms at issue, but asks the Court to balance the equities, and permit him to assign or otherwise convey any ownership interest that he retains to a person of his choosing.

## II. FACTUAL BACKGROUND

In 1992, Hummel and his wife moved from Davenport, Iowa to a rural property near Eldon, Iowa.[5] At the time of their move, Hummel owned approximately 60 firearms. He was an avid hunter up to and until the time of his conviction in the present case. After the move to Eldon, Hummel began visiting gun shows, and gun and pawn shops on an almost daily basis, frequently purchasing additional firearms. Hearing Tr. at 128. Between 1992 and the present, Hummel's inventory of firearms increased from approximately 60 to almost 700. He was not, and has never been, a federally-licensed firearms dealer.

During this same time period of time, Hummel also sold a large number of firearms. In his interview with federal agents, Hummel estimated he sold between five and ten guns per month on average. See Gov't Ex. 22, at 21. When pressed on the total number of firearms he has sold over the years, he stated "I sold a lot of guns, let's say that." Id. at 28. The majority of the sales took place at an open air gun show held on a monthly basis in Rutledge, Missouri (hereinafter "the Rutledge Gun Show"), which Hummel attended for many years.[6] Id., at 34. Undercover ATF agents testified that Hummel displayed approximately 30 guns outside his truck on the several occasions that they encountered him at the Rutledge Gun Show. In a recorded conversation, Hummel described his trips to Rutledge as being worth "two, three, four thousand dollars" each time. Gov't Ex. 21, at 17.

ATF began investigating Hummel in early 2005 after a handgun he sold was used in the fatal shooting of a police officer in Columbia, Missouri. Undercover ATF agents began interacting with Hummel at various gun shows (and ultimately his residence) during the next year, and purchased at least sixteen firearms, individually identified in the plea agreement, from Hummel at various times and locations in 2005 and 2006. As previously noted, pursuant to a federal search warrant, the Hummel property was searched on March 21, 2006 and a total of 684 firearms were located and seized. Firearms were found in the residence itself, in the shed, in the garage, and in the barn.

---

5. The Hummel property contains a residence, as well as several outbuildings, including a garage, a shed, and a barn.

6. Hummel also periodically sold firearms at other gun shows and from his home in Eldon.

Gov't Ex. 22, at 34. In addition, he admitted to federal agents that if it were "the right guy," he would act as a middle man by locating and purchasing a gun that an individual wanted (which Hummel didn't already have), and then sell it to them. Gov't Ex. 22, at 39.

## III. APPLICABLE LAW AND DISCUSSION

### A. Forfeiture pursuant to 18 U.S.C. §§ 924(d)(1) and 983

Pursuant to 18 U.S.C. § 924(d)(1), any firearm "involved in or used in" a violation of 18 U.S.C. § 922(a)(1) is subject to seizure and forfeiture. The burden of proof rests with the Government to establish, by a preponderance of the evidence, that the firearms at issue are subject to forfeiture. 18 U.S.C. § 983(c)(1).[7]

In the present action, Hummel plead guilty to a violation of 18 U.S.C. § 922(a)(1), which provides that "[i]t shall be unlawful ... for any person ... except a ... licensed dealer, to engage in the business of ... dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." The term "engage in the business" is defined as:

[A]s applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms;

18 U.S.C. § 921(a)(21)(c).[8]

Hummel argues that he plead guilty to dealing *only* the sixteen specific firearms explicitly set forth in the plea agreement, and that the Government failed to establish that he willfully engaged in the business of dealing the 627 firearms at issue in the present action. Def.'s Post–Hearing Br. at 2. With respect to these firearms, Hummel contends that: (1) he was merely "improving or liquidating a personal firearms collection;" and/or (2) he was "a person who made occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sold all or part of his personal collection of firearms." *Id.* at 8–9.

■ This Court disagrees.[9] Hummel testified that only "twenty to twenty-five" of the 627 firearms at issue were his "personal guns." Hearing Tr. at 150. The remainder were "the ones that [he] enjoyed buying and selling." *Id.* at 150–51. In other words, they were part of his inventory. As discussed above, over the past ten or fifteen years, Hummel sold a large number of firearms, and in his own words, "reinvested" the money he made into the purchase of more firearms, seeing his inventory rise from 60 to almost 700.

---

**7.** 18 U.S.C. § 983 is part of the Civil Asset Reform Act of 2000, which provides the procedural rules for any "suit or action brought under any civil forfeiture statute for the civil forfeiture of any property." *Id.* at § 983(c). The statute further provides:

[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a *substantial connection* between the property and the offense.

*Id.* at § 983(c)(3) (emphasis added).

**8.** A "dealer" is defined as "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11)(A).

**9.** As an initial matter, Hummel pled guilty to "engaging in the business of dealing firearms," not merely the sale of the specific firearms identified in the plea agreement, as he seems to contend. While those specific firearms were clearly the impetus for the charge and subsequent plea of guilty, the Government has the opportunity, pursuant to 18 U.S.C. § 924(d)(1), to prove that the 627 firearms at issue were "involved in" in the business that Hummel pled guilty to engaging in.

*See* Hearing Tr. at 145 ("Whatever I had, I sold, the money I reinvested. That's how I got 700 guns, turn over; buy them, sell them."). His actions surrounding and involving the 627 firearms at issue certainly qualify as the "repetitive purchase and resale of firearms." *See* 18 U.S.C. § 921(a)(21)(c).

Furthermore, Hummel's intention in purchasing the firearms at issue was to resell them at a profit, and he devoted his time, attention, and labor to making this happen. He testified that he hoped to make "10, 15 dollars" on each gun, and that he "didn't want to lose money." Hearing Tr. at 150–51. In an interview, he told federal agents that he made a profit on each sale, and that "I haven't been doing it for nothing." Gov't Ex. 22, at 34. In fact, Hummel told agents that the way he "gained" was by selling his guns for more than he paid, and then reinvesting in more guns.[10] Gov't Ex. 22, at 39. Hummel's argument that he was not engaged in the business of dealing these firearms because he only made a "nominal profit" on each sale is immaterial.[11] Def.'s Br. at 8; *see United States v. Powell,* 513 F.2d 1249, 1250 (8th Cir.1975) (noting that "it is clear that dealing in firearms need not be a defendant's primary business or that he must make a certain amount of profit from it in order to be found guilty of a section 922(a)(1) violation." (internal citation omitted)).

Hummel's contention that his activities merely constituted a hobby, or the enhancement of a personal collection is without merit. First, he offers no way to distinguish between his sales to undercover agents (which he admits constituted engaging in the business of dealing firearms) and the *numerous* other sales and purchases he was making during the same time period and in largely the same manner (which he claims were merely part of his hobby).

Second, for the "hobby" or "personal collection" exception to apply, a defendant must engage only in "*occasional* sales, exchanges, or purchases" of firearms. *See* 18 U.S.C. § 921(a)(21)(c) (emphasis added). As discussed above, the record is clear that Hummel's sales and purchases of firearms were not "occasional" by any reasonable definition of the word.

Finally, Hummel's entire claim is rendered suspect by his statements, recorded by undercover agents, which suggest that Hummel was aware that his activities were not only illegal, but that the penalty he would incur if caught would be *exactly* what the Government is requesting in its complaint. *See* Gov't Ex. 21, at 14 (telling an undercover agent: "All those fucking guns I got . . . they come in there and get my guns if I get in trouble . . . so I can't . . . be too loose . . . you know what I'm saying."); *id.,* at 17 ("They . . . they catch me fuckin' up . . . they get all my guns . . .

---

**10.** Hummel makes much of the fact that most of the money he made from his sales was simply reinvested back into firearms, rather than investing the money in some other way. The fact that Hummel chose to "reinvest" the revenue he generated from his sales into more firearms does not change the fact that he engaged in his activities to make a profit.

**11.** Although not necessary for its opinion, the Court notes that the evidence shows an inconsistency from Hummel with respect to how much profit he actually made. For example,

he testified at the hearing that "I didn't want to know if I win or lose or draw, whatever." Hearing Tr. at 144. This differed from his earlier recorded statement to agents that he "wasn't doing it for nothing," and that he sought to make between $15 to $25 per gun. *See* Gov't Ex. 22. However, in an even earlier recorded statement (before he knew he was under investigation) Hummel told an undercover agent, while discussing the sale of a particular firearm, "I just . . . can't afford it ain't worth my time . . . I'll only make twenty-five dollars on it." Gov't Ex. 21, at 15.

I probably got a hundred thousand dollars worth of guns.").[12]

■ The evidence presented at the hearing establishes, by a preponderance of the evidence, that with the exception of the unidentified "personal firearms" discussed above, the remainder of the 627 firearms at issue were "involved in" Hummel's offense, and accordingly, are subject to forfeiture pursuant to 18 U.S.C. §§ 924(d)(1) and 983.[13] As discussed above, however, Hummel offered credible testimony that he was an avid hunter, and that "maybe 20 to 25" of the firearms at issue were his personal guns. Hearing Tr. at 150. The firearms which Hummel held for personal use are not subject to forfeiture simply because the vast majority of seized firearms were "involved in" the underlying offense. The Government bears the burden to establish that *each* of the 627 firearms at issue were "involved in" Hummel's offense. The Court finds that it did not meet its burden with respect to Hummel's unidentified personal firearms.

The Court is in a difficult position, however, as Hummel did not present sufficient evidence to permit identification of the individual firearms that were, in fact, his personal guns. He did testify, however, that he could "look at the list and ... can tell every one."[14] Hearing Tr. at 150. Accordingly, the Court orders Hummel to submit a pleading which specifically identifies his "20 or 25" personal firearms as they appear in the Government's Complaint in Rem, accompanied by a sworn affidavit in compliance with the Federal Rules of Civil Procedure.[15] Upon receipt and consideration of Hummel's pleading, this Court will enter an appropriate Order of Forfeiture.

**B. Constitutionally Excessive Fine under the Eighth Amendment**

Even though the Government has established that the 627 firearms at issue are subject to forfeiture, Hummel argues in the alternative that such a forfeiture would be constitutionally excessive, and this Court should reduce or eliminate the forfeiture as it deems necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.[16] Hummel contends that the value of the firearms at issue—appraised at approximately $100,000 by each party[17]—is

12. Other recorded statements made by Hummel further call into question his claim (and his alleged belief) that he was merely engaging in a "hobby." Hummel told an undercover agent that "[t]hat's my job ... like you ... looking for guns." Gov't Ex. 21, at 17. During his interview with federal agents, after it was clear that he was the subject of an investigation, Hummel even went so far as to tell agents "I just have to get out of the gun business ... I guess." Gov't Ex. at 22, at 24.

13. To the extent that the requirement found in 18 U.S.C. § 983(c)(1) that the Government "establish that there was a substantial connection between the property and the offense" differs substantively from the preponderance of the evidence standard, the Court finds that the Government has met this additional burden.

14. In addition to testifying that he had "20 to 25" personal guns, Hummel provided a general description of the guns he was referencing: "[A] Browning Citori, three or four new brand new 1100s. I had 15 to 20 over and unders. They were all my personal guns. I don't know all their names, it's 3 years ago, but I can look the list up and I can tell every one." Hearing Tr. at 150.

15. In so holding, the Court *does not* grant Hummel's request to allow him to assign or otherwise convey his ownership interest in his "personal" firearms to a person of his choosing. The issue of the disposition of these firearms is addressed below in Section III.C.

16. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

17. Hummel's expert appraised the firearms at $97,762. Hearing Tr. at 144. The Government's expert appraised the firearms at ap-

excessive when compared to the gravity of Hummel's offense of conviction.

■ The Civil Asset Forfeiture Reform Act of 2000 sets forth the procedures and standards for a challenge to a civil forfeiture:

(1) The claimant ... may petition the court to determine whether the forfeiture was constitutionally excessive.

(2) In making this determination, the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture.

(3) The claimant shall have the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury.

(4) If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.

18 U.S.C. § 983(g). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Dodge Caravan Grand SE/Sport Van*, 387 F.3d 758, 762 (8th Cir.2004) (citing *United States v. Bajakajian*, 524 U.S. 321, 324, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)).

■ The Eighth Circuit applies a two-pronged approach to its Excessive Fines analysis. First, a claimant must "mak[e] a prima facie showing of 'gross disproportionality.'" *Id.* at 763 (internal quotation

omitted). "If the claimant can make this showing, the court considers whether the disproportionality 'reach[es] such a level of excessiveness that in justice the punishment is more criminal than the crime.'" *Id.* (internal quotation omitted). In determining whether a claimant has made a showing of "gross disproportionality," a district court is to consider many factors, such as:

1) The extent and duration of the criminal conduct;

2) The gravity of the offense weighed against the severity of the criminal sanction;

3) The value of the property forfeited;

4) The personal benefit reaped by the defendant;

5) The defendant's motive and culpability;

6) The extent that the defendant's interest and the enterprise itself are tainted by criminal conduct; and

7) The harm caused by the defendant's acts.

*Id.* (internal citations omitted). "This list in not exhaustive ... [and the Court must consider] 'any other factors that an excessive fine analysis might require.'" *Id.* (internal quotation omitted). Although not necessarily dispositive, "'if the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.'" *Id.* (internal quotation omitted).

■ After careful consideration of each of the factors identified above, the Court finds that the forfeiture of the firearms at issue is not grossly disproportional to Hummel's offense, and accordingly, does

proximately $76,000, but conceded that the retail price on the firearms would be about

30% higher. *Id.* at 71–74.

not constitute a constitutionally excessive fine. Both the extent and duration of Hummel's criminal conduct were significant. He sold a large number of firearms over many years, profiting from his actions, and by so doing put a significant number of firearms into circulation without following the requirements placed on federally-licensed dealers.[18] The evidence presented at the hearing also strongly suggests that Hummel was aware that his activities were in violation of the law. Even after he learned that several of the guns that he sold had been used to commit violent crimes, he continued to sell firearms without a license.

The Court recognizes that the forfeiture of property valued at approximately $100,000 is a severe monetary penalty. Hummel's offense, however, is a very serious one, particularly given the duration of his conduct and the sheer number of firearms involved. The seriousness of his offense is illustrated by the fact that the permissible range of fines for Hummel's offense under the Federal Sentencing Guidelines is between $6000 and $75,000.[19] *See* U.S.S.G. § 5E1.2. The value of the property to be forfeited in the present case is near this range. Furthermore, the relative severity of the forfeiture is offset by the fact that the Government has agreed to a sentence of probation in this case, rather than pursuing a sentence of imprisonment. Even considering Hummel's lack of criminal history, the Guideline range for a sentence of imprisonment for Hummel's offense level is between 30 and 51 months.[20] *See* U.S.S.G. § 5, Part A. Hummel's claim that a reduction or elimination of the forfeiture is necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution is without merit, and his request for relief is denied.

## C. The Disposition of Hummel's "Personal Firearms"

The Court is left with the question of how to handle the disposition of the "20 to 25" as yet unidentified personal firearms discussed above, which are not subject to forfeiture. The Government argues that *regardless* of this Court's decision with respect to the issue of forfeiture, none of the 627 firearms at issue can be returned to Hummel's possession—be it actual or constructive—due to his current status as a convicted felon. For his part, Hummel does not dispute his status as a convicted felon, or that as a convicted felon he is barred from possessing firearms under

---

**18.** Federally-licensed dealers must submit background checks for every firearm they sell, and keep detailed records pertaining to the acquisition and disposition of the firearms they handle as part of their business. *See* Hearing Tr. at 30–32.

**19.** Under U.S.S.G. § 2K2.1(a)(7), a base offense level of twelve applies to Hummel's crime. Given that his offense involved more than 200 firearms, the level would be increased by ten, making Hummel's offense a level twenty-two. *Id.* at § 2K2.1(b)(1)(A). He may have qualified for a three level reduction for timely acceptance of responsibility under U.S.S.G. § 3E1.1, bringing his total offense level down to nineteen. However, for purposes of determining the range of the fine that Hummel may have been subject to, there is little difference between a level nineteen ($6000–$60,000) and level twenty-two ($7500–$75,000) offense. In addition, the six-level reduction found in U.S.S.G. § 2K2.1(b)(2) would not apply to Hummel's conduct. Under this section, if Hummel "possessed all ... firearms *solely* for lawful sporting purposes or collection" his base offense level would be decreased to level six. *Id.* As should be clear from the Court's earlier discussion regarding Hummel's underlying conduct, the overwhelming majority of the firearms at issue were not held for sporting purposes or collection, but rather for unlicensed sales with the intention of making a profit.

**20.** This is assuming an offense level of between nineteen and twenty-two.

federal law.[21] *See* Def.'s Pre–Hearing Br. at 10–11 (discussing 18 U.S.C. § 922(g)). Instead, Hummel requests that this Court balance the equities and permit him to assign or otherwise convey his ownership interest in the firearms at issue to a person of his choosing.[22] *Id.*

The controlling precedent in the Eighth Circuit regarding a convicted felon's rights in seized firearms is found in *United States v. Felici,* 208 F.3d 667 (8th Cir.2000). In affirming the district court's denial of a claimant's motion for the return of seized firearms pursuant to Federal Rule of Criminal Procedure 41(e) (now Rule 41(g)), the *Felici* court held:

> Federal law prohibits convicted felons from possessing guns. Based on Felici's status as a convicted felon, the district court could properly conclude without receiving evidence that Felici is not entitled to a return of the firearms. Felici is also not entitled to have the firearms held in trust for him by a third party. Such a request suggests ·constructive possession. *Any firearm possession, actual or constructive, by a convicted felon is prohibited by law.*

*Id.* at 670 (internal citation omitted) (emphasis added). Constructive possession exists where the possessor " 'ha[s] control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself.' " *See United*

States v. Abumayyaleh, 530 F.3d 641, 641 (8th Cir.2008) (quoting *United States v. Piwowar,* 492 F.3d 953, 955 (8th Cir.2007)).

Hummel attempts to distinguish *Felici* from his own case by highlighting that the claimant in *Felici* was a convicted felon at the time his weapons were seized, and therefore was never in lawful possession of the firearms at issue to begin with. In contrast, it is undisputed that Hummel was in lawful possession of all of the firearms at issue in this case at the time they were seized, and could have transferred any rights he had in the property up to and until his time of conviction. According to Hummel, this distinction takes the facts of his case outside of the holding in *Felici.* This Court disagrees.

In *United States v. Howell,* 425 F.3d 971 (11th Cir.2005), the Eleventh Circuit heard and rejected the argument that Hummel makes here—namely that *Felici* does not apply to the case of a claimant who legally possessed his firearms at the time of their seizure. *Howell* involved a claimant who, like Hummel, was not a convicted felon and was in lawful possession of the firearms at issue at the time of their seizure. *Id.* at 976. Upon pleading guilty to narcotics trafficking, the claimant moved the court, pursuant to Rule 41(e), to return the firearms to the possession of a relative. *Id.* at 976–77. The *Howell* court (relying

---

**21.** Hummel has not been sentenced in the present case. However, his guilty plea to a violation of 18 U.S.C. § 922(a)(1) was accepted by this Court on February 29, 2008, and constitutes a "conviction" under 18 U.S.C. § 922(g). *See United States v. Sample,* 136 F.3d 562, 564 (8th Cir.1998) (citing *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983)).

**22.** Hummel also argues that the Government should be "estopped" from arguing that Hummel cannot exercise control over the firearms at issue due to his status as a convicted felon. Def.'s Post–Hearing Br. at 2–6. His

basic contention is that the parties agreed to submit only the question of how many of the 627 firearms at issue are subject to forfeiture due to their involvement in Hummel's offense, *not* due to Hummel's status as a convicted felon. He questions why a forfeiture hearing was necessary if the Government intended to contend that "Hummel couldn't get the guns back anyway?" *Id.* The Court is sympathetic to Hummel's position. However, the issue of whether Hummel is prohibited from exercising control over any of the firearms at issue is a separate and distinct question from that of their status in the forfeiture proceeding, and is one that this Court is required to address.

on *Felici*) explicitly rejected the notion that the claimant's status *prior* to the seizure was of importance, holding that "[t]he fact that the defendant was in lawful possession and was not a convicted felon when he acquired the three firearms is irrelevant." *Id.* at 977.

This Court agrees with the *Howell* court, and with the Northern District of Iowa's recent treatment of virtually the same issue in *United States v. Oleson,* 2008 WL 2945458, No. 01–CR–21 (N.D.Iowa July 24, 2008). *Oleson* involved a defendant who, after his conviction, sought to make a "complete gift" of the seized firearms at issue to his sister pursuant to Rule 41(g). *Id.* at *2. Like the present case, the defendant in *Oleson* was not a convicted felon at the time his firearms were seized. Applying the rationale set forth in *Felici,* the *Oleson* court held:

> Allowing Defendant to decide to whom the government should give the Firearms constitutes Defendant's constructive possession of the firearms. Although Defendant would never have physical possession of the Firearms and his exercise of control over the Firearms would be fleeting, allowing him to designate his sister as the recipient of the Firearms would require him to exercise "dominion" or "control" over the Fire-

arms because he would be deciding where they ought to go and who ought to possess them. Such constructive possession is prohibited by law.

*Id.* at *2; *see also United States v. Ronald Smith,* No. 4:06–cr–235 (S.D.Iowa September 11, 2008) (prohibiting the post-conviction gift of firearms to a claimant's wife).[23]

It must be noted, of course, that the aforementioned case law involved a defendant's motion for the return of property pursuant to Fed.R.Crim.P. 41(g), while Hummel has moved for the return of his firearms pursuant to 18 U.S.C. §§ 924(d)(1) and 983.[24] The Court finds, however, that in the present case this is a distinction without difference. *See United States v. Craig,* 896 F.Supp. 85, 89 (N.D.N.Y.1995) (finding that a defendant who could not legally possess firearms at issue could not "delegate" another to take possession of the firearms under 18 U.S.C. § 924(d)(1)). Hummel's designation of his possessory interest in his personal firearms would result in his constructive possession, as the conveyance of property to another requires the exercise of both "dominion" and "control" over the property, because Hummel would designate the location and possessor of the property. Accordingly, his request that this Court per-

---

**23.** Hummel cites to *United States v. Parsons,* 472 F.Supp.2d 1169 (N.D.Iowa 2007), in which the court balanced the equities and granted a motion for the return of property on facts which were similar to the present case. The *Parsons* court, after weighing the equities, granted the claimant's Rule 41(g) motion and ordered the firearms released to the claimant's friend. *Id.* at 1175–78. In reaching its conclusion, the court found that "permitting defendant Parsons to now designate to whom his firearm collection should be given does not rise to the level of constructive possession but is, instead, permitting defendant Parsons to exercise only the merest indicia of ownership." *Id.* at 1175. With due respect to the *Parsons* court, this Court disagrees with its conclusion on this issue. *But*

see *infra* n. 25 (agreeing with the *Parsons* court on other issues). In this Court's view, the "indicia of ownership" necessary to transfer ownership of the seized firearms, however slight, constitutes constructive possession which is prohibited by 18 U.S.C. § 922(g) and the controlling interpretation thereof discussed in this opinion.

**24.** 18 U.S.C. § 924(d)(1) provides that "upon acquittal of the owner or possessor ... the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law."

mit him to assign or otherwise convey his ownership interest in any of the 627 firearms at issue to a person of his choosing is denied.

 The Court finds, however, that it is not prohibited from ordering the sale of Hummel's personal firearms and the distribution of the proceeds to him. *See Cooper v. City of Greenwood,* 904 F.2d 302, 306 (5th Cir.1990) (noting that "[w]e see no reason that a court ·... could not order a sale for the account of a claimant who ... legally could not possess the firearms, were forfeiture to be denied for any reason.").[25] Such a resolution would not result in Hummel's exercise of "dominion" and/or "control" over the property. Rather, it would restore Hummel, as closely as possible under the circumstances, to the same position he would have been in had the Government not seized his personal firearms to begin with, and represents an equitable solution.[26] Accordingly, upon receipt and consideration of Hummel's pleading designating his personal firearms, this Court will enter an appropriate Order directing the sale of Hummel's personal firearms and the distribution of the proceeds to him.

## IV. CONCLUSION

For the foregoing reasons, this Court finds as follows:

1) With the exception of the unidentified personal firearms as discussed above, the remaining firearms at issue in this case are subject to forfeiture pursuant to 18 U.S.C. §§ 924(d)(1) and 983.

2) Hummel's request that this Court permit him to assign or otherwise convey his ownership interest in any of the 627 firearms at issue to a person of his choosing is denied, as this would result in his constructive possession of the seized firearms in violation of 18 U.S.C. § 922(g). However, the Court is not prohibited from ordering the sale of Hummel's personal firearms and the distribution of the proceeds to him.

3) Hummel is hereby ORDERED to submit a pleading which specifically identifies his "20 or 25" personal firearms (as they appear in the Government's Complaint in Rem), accompanied by a sworn affidavit in compliance with the Federal Rules of Civil Procedure.[27] Such pleading must be filed within 10 days of this Order, and any response by the Gov-

**25.** The Government argues that *United States v. Bagley,* 899 F.2d 707 (8th Cir.1990) prohibits this result. In addressing the defendant's Rule 41(e) motion for the return of seized firearms, the *Bagley* court held that "to allow [Bagley] to reap the economic benefit from ownership of weapons [ ] which it is illegal to possess would make a mockery of the law." *Id.* at 708. *Bagley,* however, dealt with a defendant who was a convicted felon at the time he acquired the firearms at issue, and therefore, was never in legal possession. There is no dispute in the present case that Hummel was in legal possession of the firearms at issue prior to their seizure. The Court agrees with the *Parsons* court that these "two situations are not the same and thus should not be treated the same." *Parsons,*

472 F.Supp.2d at 1176–77 (noting that "a defendant like Parsons [and like Hummel in the present case] would be free to lawfully dispose of his firearms in the manner he sees fit prior to pleading guilty but for the intervention of the government's seizure and continued possession of the firearms.").

**26.** Indeed, had the Government not seized Hummel's personal firearms, he could have transferred the ownership of these firearms up to and until the time of his plea of guilty in the present case.

**27.** By complying with this Order, Hummel will not waive his right to challenge on appeal this Court's holding that the remaining firearms were "involved in" his offense.

ernment shall be filed within 5 days thereafter.

4) Upon receipt and consideration of Hummel's designation of his personal firearms, this Court will enter an appropriate Order, ordering the forfeiture of the firearms involved in Hummel's offense, and directing the sale of Hummel's personal firearms and the distribution of the proceeds to him.[28]

IT IS ORDERED.

28. The Court invites the Government to propose an arrangement which would facilitate the sale of Hummel's personal firearms.